

Opinions of the United
States Court of Appeals
for the Third Circuit

5-8-1995

# United States v Corrado

Precedential or Non-Precedential:

Docket 93-1086

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation
"United States v Corrado" (1995). *1995 Decisions.* Paper 121.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/121

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 93-2086

———————

UNITED STATES OF AMERICA

vs.

ROBERT CORRADO

Robert A. Corrado,

Appellant.

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

(D.C. Criminal No. 91-cr-00055-4)

———————

ARGUED NOVEMBER 2, 1994

BEFORE:  GREENBERG, SCIRICA, and LEWIS Circuit Judges.

(Filed   May 8, 1995)

———————

Scott DiClaudio  (ARGUED)
Louis T. Savino, Jr.
Louis T. Savino & Associates
15th and JFK Boulevard
Two Penn Center, Suite 1516
Philadelphia, PA  19102

     Attorneys for Appellant

Walter S. Batty, Jr. (ARGUED)
Office of the United States Attorney
615 Chestnut Street
Philadelphia, PA  19106

<u>Attorney for Appellee</u>

_____

OPINION OF THE COURT
_____


LEWIS, <u>Circuit</u> <u>Judge</u>.

This appeal deals principally with only one issue: whether the district court properly relied upon section 1B1.11(b)(2) of the United States Sentencing Guidelines ("U.S.S.G." or "guidelines") in calculating the sentence it imposed in this case.  Section 1B1.11(b)(2) is, in essence, the United States Sentencing Commission's codification of the so-called "one book rule," the practice of applying only one version of the guidelines when calculating a defendant's sentence.  Prior to its codification, we had expressly disapproved the "one book rule"; thus, we are called upon to reconcile our prior rejection with its subsequent codification.  Because we conclude that the Sentencing Commission's adoption of the "one book rule" is binding, we will affirm the district court's judgment of sentence in this regard.[1]

_____

[1].    Corrado's appeal raised three additional challenges to the sentence the district court imposed, but because of certain concessions made by both sides prior to, during and after oral argument (some of which will require a remand), the only "live" issue on appeal is the one discussed above.

Specifically, Corrado claimed that the district court erred in computing his criminal history score by using a prior

I.

During a period from June 1985 through May 1988, Corrado was involved in the operation of a stolen car ring and "chop shop," as well as a conspiracy to defraud Stereo Discounters Electronic World, Inc., an electronics retailer. Corrado entered a guilty plea to two counts of a 38-count indictment and, in November 1993, was sentenced to two concurrent 57-month terms of imprisonment.[2]  Pursuant to section

(..continued)
misdemeanor shoplifting conviction which was (a) uncounseled, and (b) constituted a "local ordinance violation."  Corrado later withdrew both contentions, acknowledging that the Supreme Court has explicitly held that a court may consider a defendant's prior uncounseled misdemeanor conviction without offending the Sixth Amendment right to counsel (Nichols v. United States, 114 S. Ct. 1921, 1928 (1994)), and that the offense had been prosecuted as a state misdemeanor rather than a local ordinance violation.

Corrado had also claimed that the district court improperly considered a prior conviction for interstate transportation of stolen goods which had been set aside under the Youth Corrections Act ("YCA"), 18 U.S.C. § 5021(a), and erred in imposing two five-year terms of supervised release, which were in excess of the statutory maximum set forth in U.S.S.G. §5D2.1(b), which provides for a term of "at least two but not more than three years . . . ."  The government conceded that the terms of supervised release exceeded the statutory maximum and should be reduced on remand, and we agree.  The government also conceded that if Corrado's prior conviction for interstate transportation of stolen goods was, in fact, set aside under the YCA, it should not have been included in computing Corrado's criminal history score.  We agree with the government that "this question should be remanded to the district court for a determination of whether or not the particular sentence at issue here . . . was a YCA sentence."  Appellee's Br. at 22.  Accordingly, we will remand to the district court for resentencing under U.S.S.G. §5D1.2(b) with respect to the terms of supervised release, and for reconsideration of Corrado's criminal history score following a determination of whether the conviction was set aside under the YCA.

[2].   The sentence was based on a criminal history category of V and a total offense level of 19.  The number 19, which represents

1B1.11(b)(1) of the November 1993 version of the guidelines (the edition in effect at the time of Corrado's sentencing), the district court looked to the 1987 version of the guidelines (the edition in effect at the time Corrado committed his crimes) to calculate the sentence.  The court pursued this regimen because application of the 1993 version of the guidelines would have resulted in Corrado receiving a more severe sentence than he could have anticipated when he committed his crimes.  See U.S.S.G. §1B1.11(b)(1) (1993) (directing courts to use the guidelines in effect at the time the offense was committed if the guidelines in effect at the time of sentencing would violate the Constitution's ex post facto clause).  As part of the calculation of Corrado's sentence, the district court granted the two-level reduction for acceptance of responsibility available under the 1987 guidelines.  See U.S.S.G. §3E1.1(a) (1987).

Corrado now argues that the district court erred because it did not grant him a three-level downward adjustment -- the maximum reduction available under the 1993 version of the guidelines for acceptance of responsibility.  See U.S.S.G. §3E1.1 (1993).

(..continued)
the higher of the two offense levels produced after levels for each count were calculated, see U.S.S.G. §3D1.2(d) (Nov. 1987) (requiring that counts be grouped when they involve substantially the same harm) and §3D1.3(b) (Nov. 1987) (requiring use of highest offense level produced when offenses are grouped), was based upon a base offense level of six; which was increased by eight due to the amount of monetary loss involved; which was then increased by two for more than minimal planning; then by three because Corrado was a manager; then by two for obstruction of justice; and which was then decreased by two for acceptance of responsibility.

We have jurisdiction under 18 U.S.C. § 3742(a).

## II.

As a general rule, a defendant's sentence should be based on the guidelines "that are in effect on the date that the defendant is sentenced." United States v. Menon, 24 F.3d 550, 566 (3d Cir. 1994); United States v. Cherry, 10 F.3d 1003, 1014 (3d Cir. 1994); United States v. Kopp, 951 F.2d 521, 526 (1991); 18 U.S.C. § 3553(a)(4); U.S.S.G. §1B1.11(a) (1993). When, however, the retroactive application of the version of the guidelines in effect at sentencing results in more severe penalties than those in effect at the time of the offense, the earlier version controls, United States v. Seligsohn, 981 F.2d 1418, 1424 (3d Cir. 1992), citing Kopp, 951 F.2d at 526; see also United States v. Pollen, 978 F.2d 78, 90 (3d Cir. 1992); United States v. Chasmer, 952 F.2d 50, 52 (3d Cir. 1991); U.S.S.G §1B1.11(b)(1) (1993), since, as already noted, to apply a change in the guidelines that enhances the penalty would offend the ex post facto clause of the United States Constitution. See Miller v. Florida, 482 U.S. 423, 431-35 (1987); Menon, 24 F.3d at 566; U.S. Const. Art. I, § 9. Moreover, if the application of the guideline manual in effect at the time of sentencing would violate the ex post facto clause, the manual in effect on the date of the offense should be used in its entirety. U.S.S.G. §1B1.11(b)(2) (1993) (emphasis added). The practice of applying

only one version of the guidelines when calculating a defendant's sentence has been referred to as the "one book rule".[3]

It is undisputed that the district court correctly looked to the 1987 version of the guidelines in determining Corrado's sentence. Indeed, there is no question but that Corrado would have received a more severe sentence had the 1993 guidelines been applied. Under the 1987 guidelines, Corrado's offense level was increased by eight levels to account for the monetary loss he caused, while under the 1993 guidelines the same loss would have resulted in an eleven-level increase.[4] Compare U.S.S.G. §2F1.1(b)(1)(I) (1987) with U.S.S.G. §2F1.1(b)(1)(L) (1993). This difference meant that, even with the three-level acceptance of responsibility adjustment, Corrado's applicable range under the 1993 guidelines would have been 70 to 87 months,

_____

[3]. Section 1B1.11(b)(2) provides in pertinent part:

> The Guidelines Manual in effect on a particular date shall be applied in its entirety. The court shall not apply, for example, one guideline section from one edition of the Guidelines Manual and another guideline section from a different edition of the Guidelines Manual.

U.S.S.G. §1B1.11(b)(2), p.s. (1992).

[4]. The parties stipulated that the loss caused by each of the two counts of conviction was $600,000, or a total of $1.2 million. Thus, since the grouping requirements provide that the dollar amounts be aggregated, the Presentence Report indicated that the total amount of loss, for the purposes of calculating Corrado's sentence, was $1.2 million. Presentence Report at 9, ¶ 41; see U.S.S.G. §3D1.2(d) (1987). The district court, however, found that the total monetary loss was "less than $1,000,000." App. at 10. This finding does not affect our analysis.

while under the 1987 guidelines, with the two-level reduction, his sentencing range was only 57 to 71 months.

### III.

Corrado suggests that the district court should have used the 1987 version of the guidelines when calculating his adjusted offense level and the 1993 version when determining the maximum permissible downward adjustment for acceptance of responsibility. He argues that because 18 U.S.C. § 3553(a)(4) requires that sentences be calculated according to the guidelines in effect at the time of sentencing, he is entitled to the benefit of the 1993 provision governing acceptance of responsibility. In essence, Corrado challenges the district court's decision to apply the 1987 guidelines as a whole rather than considering each provision in isolation and applying only those provisions from the 1987 version of the guidelines which are more favorable. In support of his position, Corrado advances two distinct arguments. First, he claims that the district court was free to disregard section 1B1.11(b)(2) because it is "not a guideline as such, rather it is a policy statement[,] . . . [which is] not binding on the sentencing court." Appellant's Br. at 17-18. Corrado also contends that the application of section 1B1.11, itself, violates the ex post facto clause; according to Corrado, but for that provision, which was added to the guidelines after he committed his crimes, the district court would have been free to apply the 1987 guidelines in determining his adjusted offense level and the 1993 provision for acceptance

of responsibility -- a process which would have resulted in a more favorable sentence.

We have plenary review of issues of law raised by the application of the guidelines.  United States v. Mobley, 956 F.2d 450, 451 (3d Cir. 1992).  We will address Corrado's contentions in turn.

## A.

Corrado's claim that the district court was not bound to follow section 1B1.11(b)(2) because it is a policy statement rather than a guideline is, quite simply, mistaken.  The Guideline Manual contains three varieties of text:  guidelines provisions, policy statements and commentary.  Title 28 of the United States Code at section 994, draws an unequivocal distinction between "guidelines," 28 U.S.C. § 994(a)(1), and "general policy statements regarding the application of the guidelines," 28 U.S.C. § 994(a)(2), as do other sections of the statute.  See, e.g., 28 U.S.C. § 994(a)(3) (referring specifically to "guidelines or general policy statements"); § 994(c) (referring specifically to "guidelines and policy statements").  Policy statements, unlike the guidelines, are not subject to formal legislative review and do not have the same degree of authority as guidelines.  See United States v. Gaskill, 991 F.2d 82, 85 (3d Cir. 1993).  The Supreme Court, however, has stated that "[t]he principle that the Guidelines Manual is binding on federal courts applies as well to policy statements." Stinson v. United States, 113 S. Ct. 1913, 1917 (1993). Furthermore, where "a policy statement prohibits a district court

from taking a specified action, the statement is an authoritative guide to the meaning of the applicable guideline." Williams v. United States, 503 U.S. 193, 201 (1992);[5] United States v. Reilly, 33 F.3d 1396, 1424 n.21 (3d Cir. 1994). In this case, the policy statement at issue expressly prohibits district courts

[5]. Corrado urges us to consider United States v. Dawson, 990 F.2d 1314 (D.C. Cir. 1993), wherein the Court of Appeals for the District of Columbia limited Williams v. United States, 112 S. Ct. 1112, 1119 (1992), to situations in which a policy statement explains an applicable guideline. In this regard, the Dawson court stated:

> The Government can take no comfort in [Williams] which it cited for the general proposition that there is no meaningful distinction between the guidelines and policy statements . . . . The Court in Williams did not address whether a policy statement promulgated in the absence of a corresponding guideline is a valid exercise of the Commission's authority. Rather, the Court apparently assumed that the policy statement at issue in Williams explained an applicable guideline. By contrast, in this case there is no guideline applicable to the determination . . . .

Dawson, 990 F.2d at 1319.

Corrado suggests that this case is analogous to Dawson because section 1B1.11(b)(2) "was not promulgated to explain an underlying guideline, rather, it is a policy statement which stands alone, seeking to reconcile 18 U.S.C § 3553(a)(4),(5)[;] the ex post facto clause[;] congressional intent and the Commission's own policy concerns." Appellant's Br. at 19. Although we do not read Williams as narrowly as the Dawson court did, we do not believe the more limited view would change the result in this case. Corrado correctly notes that section 1B1.11(b)(2) does not correspond to a particular guideline. The policy statement does, however, explain how the applicable guidelines shall be applied. The fact that section 1B1.11(b)(2) pertains to many guidelines rather than a single guideline is, in our view, of little significance to the determination of whether the section is binding on sentencing courts.

from doing precisely what Corrado suggests the district court here should have done -- namely, to mix and match provisions from different versions of the guidelines in order to tailor a more favorable sentence. Because of its prohibitive nature, as well as the fact that we believe applying various provisions taken from different versions of the guidelines would upset the coherency and balance the Sentencing Commission obviously intended in promulgating the guidelines, see United States v. Kikamura, 918 F.2d 1084, 1109 (3d Cir. 1990), we conclude that section 1B1.11(b)(2) is binding and, as such, was properly followed by the district court in this case.

We need not reach Corrado's claim that the district court "was obligated to . . . follow the approach established by the Third Circuit" in Kopp and Seligsohn. See Appellant's Br. at 19. Although we previously held that the "so-called [one book] rule is inconsistent with United States v. Kopp and other cases in this Court[,]" and "expressly disapprove[d] of the `one book' practice as in conflict with the Kopp opinion[,]" Seligsohn, 981 F.2d at 1424, the Sentencing Commission, through its adoption of section 1B1.11(b)(2), has effectively overruled those opinions insofar as they conflict with the codification of the "one book rule." Of course, we hasten to note that to the extent these decisions do not conflict with section 1B1.11(b)(2), their vitality remains.

B.

Corrado's second claim –- that because the "one book rule" was not in effect at the time of his offenses, its application violates the ex post facto clause –- is likewise unavailing. The ex post facto clause "forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." Weaver v. Graham, 450 U.S. 24, 28 (1981). Significantly, Corrado's sentence was, in fact, imposed pursuant to the law in effect at the time he committed his crimes. Corrado had "fair warning" of the specific punishment prescribed for his crimes, see Miller v. Florida, 482 U.S. at 430-431, and of the maximum available reduction for acceptance of responsibility which was two levels. It is true that Corrado could not have predicted that the "one book rule" would have required him to be sentenced under the 1987 version of the guidelines, thus prohibiting him from receiving an additional one-level decrease for acceptance of responsibility. Of course, it is equally true that Corrado could not have forecast that a more favorable provision for acceptance of responsibility might exist in 1993. But the impossibility of prognostication under these circumstances is not at all analogous to "the lack of fair notice" which, from the outset, has been recognized as central to the ex post facto prohibition. See Miller, 482 U.S. at 430, citing Weaver, 450 U.S. at 30. The ex post facto clause protects defendants from future legislation which "increases punishment beyond what was prescribed when the crime was consummated." Id.

The sentencing guidelines are subject to continuous review and revision. Some changes might benefit a defendant while others might operate to his or her detriment. In this case, the application of the 1987 guidelines, pursuant to section 1B1.11(b)(2), resulted in a sentence of at least thirteen months <u>less</u> than what Corrado would have received under the 1993 guidelines. In our view, where, as here, the applicable guidelines overall work to the defendant's advantage in terms of the sentence imposed, there is no <u>ex post facto</u> violation. <u>See</u> <u>United States v. Bertoli</u>, 40 F.3d 1384, 1404 n.17 (3d Cir. 1994).

IV.

In determining that section 1B1.11(b)(2) is binding and that its application does not offend the <u>ex post facto</u> clause, we join the majority of other courts of appeal which have already upheld the application of the "one book rule." <u>See</u> <u>e.g.</u> <u>United States v. Nelson</u>, 36 F.3d 1001, 1004 (10th Cir. 1994) (stating that a defendant may not select piecemeal from different versions of the guidelines to come up with the most advantageous combination of provisions from the two books); <u>United States v. Springer</u>, 28 F.3d 236, 237-38 (1st Cir. 1994) (upholding section 1B1.11(b)(2) and finding application of the one book rule did not violate the <u>ex post facto</u> clause); <u>United States v. Lance</u>, 23 F.3d 343, 344 (11th Cir. 1994) (refusing to "mix and match" amended provisions to reach a more favorable sentence); <u>United States v. Boula</u>, 997 F.2d 263, 265-66 (7th Cir. 1993) (refusing to apply guidelines in "piecemeal fashion"); <u>United States v. Warren</u>, 980 F.2d 1300, 1305-06 (9th Cir. 1992) (rejecting

"piecemeal application of the guidelines"); United States v. Lenfesty, 923 F.2d 1293, 1299 (8th Cir. 1991) (refusing defendant's request to receive application of favorable change in guidelines while continuing to receive the benefit of a provision under previous version of the guidelines); United States v. Stephenson, 921 F.2d 438, 441 (2d Cir. 1990) (concluding that "applying various provisions from different versions of the guidelines would upset the coherency and balance the Commission achieved in promulgating the Guidelines").  In addition, and perhaps more important, our conclusion is consistent with the Commission's obvious intention that the guidelines operate as a cohesive and integrated whole.

V.

For the reasons set forth above, we will affirm the district court's application of the "one book rule."  We will, however, remand to the district court for resentencing and reconsideration in accordance with this opinion.

_____