

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-5-1995

# United States v Griswold

Precedential or Non-Precedential:

Docket 94-1979

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"United States v Griswold" (1995). *1995 Decisions.* Paper 151.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/151

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-1979


UNITED STATES OF AMERICA

v.

GREGORY GRISWOLD,
a/k/a ROBERT SAUNDERS,
a/k/a JULIUS H. COLLIER, JR.,
a/k/a THEODORE COBB
                    Gregory Griswold,
                              Appellant


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 94-cr-00083)


Submitted May 15, 1995
BEFORE:  COWEN, LEWIS and GARTH
          Circuit Judges

(Filed  June 5, l995 )


Nancy B. Winter
Office of United States Attorney
615 Chestnut Street
Philadelphia, PA  19106

        COUNSEL FOR APPELLEE
        UNITED STATES OF AMERICA


James M. Becker
Saul, Ewing, Remick & Saul
3800 Centre Square West
Philadelphia, PA  19102

        COUNSEL FOR APPELLANT
        GREGORY GRISWOLD

COWEN, Circuit Judge.

In this appeal, we are asked to decide whether the district court erred: (1) in ruling that eight firearm counts in the indictment formed five separate groups under U.S.S.G. § 3D1.2, instead of a single group; and (2) when, in sentencing the defendant under the more favorable 1990 sentencing guidelines, it failed to accord the defendant an additional point for acceptance of responsibility as is permitted under § 3E1.1 pursuant to the 1993 sentencing guidelines. Because we conclude that the district court did not err in applying and interpreting the Sentencing Guidelines, we will affirm the sentence of appellant in all respects.

I. FACTUAL AND PROCEDURAL HISTORY

Between May 22, 1989 and June 26, 1991, appellant Gregory Griswold ("Griswold") purchased seven firearms from a licensed firearms dealer in Philadelphia. Specifically, he purchased two firearms on May 22, 1989, two more on August 8, 1989, and one each on October 6, 1989, March 4, 1991, and June 26, 1991. On the first three occasions, Griswold used the fictitious name of "Julius H. Collier, Jr." The last two times he used the name "Robert Saunders." For each firearm, he completed the standard "Firearms Transaction Record" of the Bureau of Alcohol, Tobacco, and Firearms. On the form, he

misrepresented that he had never been convicted in any court of a crime punishable by imprisonment for a term exceeding one year, when, in fact, he had previously been convicted of third degree homicide.  On July 11, 1991, Philadelphia Police Officers, while executing a search warrant at a residence in Philadelphia, found Griswold in possession of two of the illegally purchased firearms.

On February 23, 1994,[1] a federal grand jury in the Eastern District of Pennsylvania returned an indictment charging Griswold with seven counts of making false statements to a licensed dealer in connection with the acquisition of a firearm, in violation of 18 U.S.C. § 922(a)(6), and one count of unlawful possession of firearms by a previously convicted felon, in violation of 18 U.S.C. § 922(g)(1).[2]  Griswold entered into a

---

[1].  The delay between the initial arrest and the indictment of Griswold was due to the fact that he remained a fugitive for more than two years.

[2].  The indictment charged Griswold as follows:

| COUNT | DATE OF OFFENSE | FIREARM | ALIAS USED | OFFENSE |
|-------|-----------------|---------|------------|---------|
| One | 5-22-89 | Intratec 9mm. semi-auto | Julius Collier, Jr. | False statement |
| Two | 5-22-89 | Colt .380 semi-auto | Julius Collier, Jr. | False statement |
| Three | 8-8-89 | Sig Sauer .380 semi-auto | Julius Collier, Jr. | False statement |
| Four | 8-8-89 | Colt .380 semi-auto | Julius Collier, Jr. | False statement |

plea agreement with the government and on May 16, 1994, he
entered a plea of guilty to all eight counts.  The plea agreement
contained several stipulations relevant to the computation of
Griswold's sentencing guideline range.  Because the Commission
had amended § 2K2.1 after Griswold committed the charged
offenses, the 1993 version would have resulted in a harsher
sentence than the version in effect when he committed the
offenses, raising a possible ex post facto challenge.  Both
parties agreed that the version of U.S.S.G. § 2K2.1 effective
November 1, 1990 was the applicable guideline for determining the
offense level of the firearms offenses.[3]  The parties further

(..continued)

| Five | 10-6-89 | Beretta .380 semi-auto | Julius Collier, Jr. | False statement |
| Six | 3-4-91 | Beretta .25 semi-auto | Robert Saunders | False statement |
| Seven | 6-26-91 | Glock 9mm. semi-auto | Robert Saunders | False statement |
| Eight | 7-11-91 | same as counts 5 and 6 | Robert Saunders | Felon in possession |

[3].  All parties agree that the "stipulations [were] not binding
upon either the Probation Department or the Court."  App. at 20.
We further recognize that despite this stipulation, Griswold
properly preserved for appeal his right to argue that the 1993
guidelines should be applied so that he may gain the benefit of
one extra point for acceptance of responsibility pursuant to §
3E1.1.  This argument was not waived because at the time of the
stipulation, the parties agreed that Griswold would be entitled
to a maximum of two points for acceptance of responsibility.  The
issue of the extra point did not arise until after the district
court, exercising its discretion, disregarded that portion of the
plea agreement which grouped all eight offenses as one.  See
infra part IV.A. for discussion of the grouping of the offenses

stipulated that the eight firearms offenses constituted a single group under U.S.S.G. § 3D1.2.[4]

However, over Griswold's objection at sentencing, the probation office concluded and the district court agreed, that the application of U.S.S.G. § 3D1.2 to the eight firearms offenses yielded five separate groups, not a single group as the parties had stipulated.  As a result of the district court's grouping of the firearms offenses into five groups, Griswold's offense level was increased to 17, which would have made him eligible for a three-level reduction for acceptance of responsibility under § 3E1.1 of the 1993 guidelines.  However, the district court concluded that the 1990 version of § 3E1.1 was controlling and granted only a two-level reduction.  This appeal followed.

(..continued)
and part IV.C. for discussion of the applicability of the 1993 guidelines.

[4].  Both parties maintain that the plea agreement provided that all eight offenses would be grouped as one pursuant to § 3D1.2.  Although the plea agreement states,"[t]he government and the defendant agree and stipulate that the offenses group for the purposes of sentencing pursuant to U.S.S.G. § 3D1.2,"  App. at 20, it does not explicitly state that all of the offenses will be grouped into one group.  Because such ambiguous language lends itself to a variety of interpretations, we believe that the better practice in drafting plea agreements is to explicitly state how many groups will be formed as a result of "grouping."  As evidenced by the district court's decision in this matter, it is not always the case that grouping under § 3D1.2 will yield only one group.

## II. JURISDICTION

The district court had jurisdiction to entertain this criminal matter pursuant to 18 U.S.C. § 3231 insofar as the defendant was charged with offenses against the laws of the United States under 18 U.S.C. §§ 922(a)(6), 924(a), and 922(g)(1).  Our jurisdiction is premised on 28 U.S.C. § 1291 (appeal from a final judgment of a district court) and 18 U.S.C. § 3742(a)(2) (appeal from a final sentence).

## III. STANDARD OF REVIEW

A district court's application and interpretation of the Sentencing Guidelines is subject to plenary review. United States v. Mobley, 956 F.2d 450, 451-52 (3d Cir. 1992); see United States v. Riviere, 924 F.2d 1289, 1304 (3d Cir. 1991) (construction of § 3D1.2 is a legal issue subject to plenary review).  However, a determination of whether various offenses are part of one overall scheme is essentially a factual issue which we review under a clearly erroneous standard.  United States v. Cusumano, 943 F.2d 305, 313 (3d Cir. 1991), cert. denied, 502 U.S. 1036, 112 S. Ct. 881 (1992) (citing United States v. Ortiz, 878 F.2d 125, 126-27 (3d Cir. 1989).  Finally, when reviewing the appropriateness of a grouping, deference must be given to the district court.  United States v. Seligsohn, 981 F.2d 1418, 1426 (3d Cir. 1994), cert. denied, __ U.S. __, 115 S. Ct. 1143 (1995) (citing United States v. Beard, 960 F.2d 965, 969 (11th Cir. 1992)).

## IV. DISCUSSION

### A.  Groups of Closely Related Counts

Griswold maintains that the district court erred in its application of the multiple count rules under § 3D1.2 of the Sentencing Guidelines by concluding that the eight firearms counts in the indictment made up five separate groups, instead of one group, as the parties had earlier stipulated.  Section 3D1.2 of the 1990 United States Sentencing Guidelines stated in relevant part:

> All counts involving substantially the same harm shall be grouped together into a single Group.  Counts involved substantially the same harm within the meaning of this rule:
>
> . . . .
>
> (b)  When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.
>
> (c)  When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.
>
> (d)  When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

U.S.S.G. § 3D1.2(b)-(d) (1990).  Griswold argues that § 3D1.2(b),
(c) and (d) each require grouping of the eight firearms offenses
into a single group.

### 1.  U.S.S.G. § 3D1.2(b)

Griswold asserts that the initial inquiry under §
3D1.2(b) is whether the counts involve the same victim.  In the
commentary to § 3D1.2, application note 2 indicates that, "[f]or
offenses in which there are no identifiable victims (e.g., drug
or immigration offenses, where society at large is the victim),
the `victim' for purposes of subsections (a) and (b) is the
societal interest that is harmed."  U.S.S.G. § 3D1.2, comment,
n.2 (1993).[5]  Griswold concludes that the firearms offenses to
which he pleaded guilty harmed no specific person, but rather
offended society at large.  He notes that 18 U.S.C. § 922(a)(6)
(making false statements to a dealer in connection with the
acquisition of firearms) and 18 U.S.C. § 922(g)(1) (unlawful
possession of firearms by a previously convicted felon) are part
of a comprehensive scheme to promote the societal interest in
combatting the criminal use of firearms by deterring sales to

---

[5].  As noted earlier, both parties concede and the district court
agreed that the 1990 version of the sentencing guidelines should
be applied in calculating Griswold's sentence.  However, as noted
in § 1B1.11 of the sentencing guidelines, "if a court applies an
earlier edition of the Guidelines Manual, the court shall
consider subsequent amendments, to the extent that such
amendments are clarifying rather than substantive changes."
U.S.S.G. § 1B1.11 (1993).  Although the commentary and
application notes from 1990 and 1993 are substantially similar,
we will refer to the 1993 commentary and application notes when
it is instructive to do so.

specified classes of persons, including convicted felons. Griswold next argues that because the societal interests underlying both laws are similar and because society is the victim, all of the offenses must be grouped together.

In support of his argument that § 3D1.2(b) requires all these offenses to be grouped into a single group, Griswold cites United States v. Riviere, 924 F.2d 1289 (3d Cir. 1991). In that case, we were faced with the question of proper grouping as to three firearms-related counts which arose from the same incident or conduct: possession of a firearm by a convicted felon, illegal delivery of the same firearm, and the possession of the firearm with an obliterated serial number. Id. at 1303. In deciding whether these offenses should be grouped, this court referred to the commentary to § 3D1.2(d) of the 1990 sentencing guidelines which provided that sentence enhancement should not result from multiple counts unless they represent additional conduct. Id. at 1305. We concluded that because no additional conduct was represented by the additional counts, it was appropriate to group all of the firearms-related offenses. Id. at 1306.

Unlike the situation present in Riviere, Griswold's multiple counts encompassed numerous instances of illegal conduct -- purchases and possession of eight semi-automatic handguns spanning in excess of two years. We remain unconvinced that the Sentencing Commission contemplated grouping these offenses. To do so would reward Griswold, who made discrete purchases of

firearms over a substantial period of time, by punishing him the same as an offender who made one purchase.

Furthermore, in analyzing "the societal interest that is harmed," we find application note 4 to be instructive:

> Subsection (b) provides that counts that are part of a single course of conduct with a single criminal objective and represent essentially one composite harm to the same victim are to be grouped together, even if they constitute legally distinct offenses occurring at different times. This provision does not authorize the grouping of offenses that cannot be considered to represent essentially one composite harm (e.g., robbery of the same victim on different occasions involves multiple, separate instances of fear and risk of harm, not one composite harm) . . . . The defendant is convicted of two counts of rape for raping the same person on different days. The counts are not to be grouped together.

U.S.S.G. § 3D1.2, comment, n.4 (1993) (emphasis in original). The Sentencing Commission, in its wisdom, saw fit to decide that multiple counts of rape or robbery not be grouped together when dealing with the same victim. Because each time Griswold illegally acquired a firearm there was a separate and distinct fear and risk of harm to society, we hold that his illegal purchase of firearms on multiple occasions should not be grouped together.

## 2. U.S.S.G. § 3D1.2(c)

Next, Griswold argues that even assuming arguendo the offenses should not be grouped under § 3D1.2(b), they should be grouped under § 3D1.2(c). Griswold notes that his status as a

previously convicted felon is an essential element of the offense of possession of a firearm by a previously convicted felon and a factor in setting the base offense level of the counts involving false statements in connection with the acquisition of a firearm. He concludes that the counts should be grouped as one because "one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." (quoting U.S.S.G. § 3D1.2(c) (1990)). However, as noted by the probation office, no conduct embodied in one of the counts is used as a specific offense characteristic in the determination of the offense level for another count. Griswold's status as a convicted felon is implicated in establishing the base offense level for each offense. However, no separate conduct by Griswold resulted in double counting. Further, where there was some overlapping of counts, i.e., where the firearms involved in the count charging the defendant with illegal possession of the firearms (count eight) were also involved in counts charging false statements (counts six and seven), the court did group those counts together.

### 3. U.S.S.G. § 3D1.2(d)

Last, Griswold contends that all of the offenses should be grouped together pursuant to § 3D1.2(d). He asserts that the firearms offenses were "ongoing and continuous" because they were part of the same criminal plan, and they all involved his felon status as an essential element. He refers to the commentary of §

3D1.2(d) which states that "firearm offenses" are among those to be grouped together and points to an example which provides grouping for a "defendant [who] is convicted of three counts of unlicensed dealing in firearms."  U.S.S.G. § 3D1.2, comment, n.6 (1993).  Griswold maintains that the multiple counts of § 922(a)(6) and § 924(a) (making false statements in connection with acquisition of a firearm) to which he pled guilty should be grouped together just as "three counts of unlicensed dealing in firearms" would be grouped together pursuant to §3D1.2(d).

We note that the guideline stipulated to in the instant case, § 2K2.1 (1990),[6] does not provide for multiple violations, nor does it provide a means of accounting for more than one firearm.  In contrast, § 2K2.2 (1990),[7] which is specifically delineated as an offense that should group pursuant to subsection (d), makes provisions for incremental increases in offense levels based upon the number of firearms involved.  It is to § 2K2.2 that the commentary speaks when it states that "most . . . firearms offenses, and other crimes where the guidelines are based primarily on quantity or contemplate continuing behavior are to be grouped together."  U.S.S.G. § 3D1.2, comment, n.6 (1990).  A defendant convicted of three counts of unlicensed dealing in firearms (conduct covered by U.S.S.G. § 2K2.2) has

_____

[6].  Section 2K2.1 of the 1990 U.S.S.G. deals with the "Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition."

[7].  Section 2K2.2 of the 1990 U.S.S.G. deals with "Unlawful Trafficking and Other Prohibited Transactions Involving Firearms."

necessarily been punished in relation to the number of weapons involved, and thus grouping of the offenses would be appropriate. Because the guideline applicable in Griswold's case is U.S.S.G. § 2K2.1, and not § 2K2.2, the underlying offense is not a crime that must be grouped pursuant to § 3D1.2(d).  Stated differently, multiple counts of illegal acquisition of a firearm (punishable under § 2K2.1) need not be grouped simply because "three counts of unlicensed dealing in firearms" (punishable pursuant to § 2K2.2) must be grouped pursuant to § 3D1.2(d).[8]

   B.  Government's Failure to Adhere to Plea Agreement

      As an ancillary argument to his claim that the district court erred in failing to group the firearms offenses into one group, Griswold contends that "the government made what was at best a lukewarm endorsement of the stipulation it made as part of the plea agreement."[9]  Griswold cites United States v. Badaracco,

---

[8].  In the 1991 guidelines version and henceforth, the Sentencing Commission consolidated the 1990 version of U.S.S.G. §§ 2K2.1, 2K2.2, and 2K2.3 into the newly constructed § 2K2.1.  At the same time, although U.S.S.G. § 2K2.1 was not previously specifically designated as an offense subject to grouping pursuant to § 3D1.2(d) in the 1990 guidelines, in the 1991 and later guidelines versions it was so specifically designated.  Thus, while Griswold's offenses should not be grouped pursuant to § 3D1.2(d) (1990), under § 3D1.2(d) (1993) the offenses must be grouped together.  However, even if Griswold's offenses were grouped under the 1993 version, his sentence would still be more than if he was sentenced, but not grouped, under the 1990 version.  We will assume that given the choice, Griswold would still opt to be sentenced under the 1990 guidelines.

[9].  Griswold points to the following portion of the sentencing hearing to illustrate that the government did not fulfill its obligations under the plea agreement:

(..continued)

Mr. Becker: [T]here was a guilty plea reached in writing where both parties, the Government and Mr. Griswold, agreed that Counts 1 through 8 of the indictment constitute a single group for purposes of application of this rule.

. . . .

AUSA Winter: Your Honor, the Government does have to concede that both counsel and I may have been in error in our stipulation as to the grouping. However, at the same time, the Government recognizes that we did the stipulation with the defendant and to some degree, if there is support -- albeit, a generous interpretation of that support -- if there is support for that interpretation, I believe the Court would be within its bounds to find the offense level in accord with the stipulation.

I say that because I don't think that the Probation Department is wrong in their grouping and I don't wish to suggest that they are. But at the same time, the Government recognizes that groupings are a factor that are usually best left to the discretion of the trial court, who makes factual determinations and that there is, I guess, some room for -- for movement or some room for interpretation on how those are grouped.

I am in accord with the defense that there is an Eastern District of Pennsylvania opinion that does lend support to his argument, Pellowitz. There is a distinction in that case from the instant case, that is, it involved a dealer of firearms, which involved a

954 F.2d 928 (3d Cir. 1992), for the proposition that the government is not permitted to make statements that effectively undermine guidelines stipulations it enters under U.S.S.G. § 6B1.4 as part of a plea agreement. In that case, the government stipulated that the defendant's conduct did not involve more than minimal planning. The probation office, however, found that the defendant's offense did involve more than minimal planning and recommended a two point enhancement in the base offense level, to which the district court agreed. Id. at 938-39. On appeal, the defendant argued that statements made by the government at

(..continued)

> different guidelines section and, in fact, one that is specifically included in 3D1.2 Group D for grouping, whereas the guideline in this offense was not specifically included in Section D of 3D1.2.
>
> I guess I don't want to -- I guess I'm trying to be very frank with the Court, because I am requesting an upward departure of the defendant and the Government does not wish to seem unseemly and seize upon any opportunity to justify a higher level by first agreeing to stipulate with the defendant and then turn around and say, you know what, I was wrong and you're -- and you're stuck with a higher guidelines level and I'm going to upwardly depart. I -- I want to be fair to the defendant and in -- in bending over backwards to be fair and giving a very generous interpretation to this, I think the Court could find all of the grouping.

App. at 26-28 (emphasis added).

sentencing were violative of the plea agreement because the government's conduct was inconsistent with what he understood when entering the plea of guilty.  Id. at 939.  We concluded that:

> The comment by the attorney for the government that "there was an affirmative step taken by [the defendant] indicating that he was concealing something" provided the district court with a basis to reject the government's stipulation in its plea agreement and to adopt the probation department's recommendation that there was more than minimal planning by [the defendant].  We therefore agree with [the defendant] that the government violated the spirit, if not the letter, of the plea agreement.

Id. at 940 (footnote omitted).

In the case before us, the government was not trying to urge the district court to adopt the recommendation of the probation office.  Quite the contrary, the government was simply pointing up to the court an obvious conflict which existed between the plea agreement and the probation report, and explaining to the court why it would be "within its bounds to find the offense level in accord with the stipulation" in the plea agreement.  Because we conclude that Badaracco is distinguishable and we find that the government's conduct at sentencing was not inconsistent with the terms of the plea agreement, we will not remand this case for resentencing.

Additionally, Griswold argues that the government on appeal has totally repudiated the stipulation upon which he relied in entering the plea agreement.  However, we note that the

plea agreement specifically provided that, "[n]othing in this agreement shall limit the government in its comments in, and responses to, any post-sentencing matters." App. at 18. Thus, the government did not act contrary to the plea agreement when, on appeal, it argued that the district court did not err in grouping the offenses into five separate groups.[10]

### C.  The "One Book Rule"

As part of the calculation of Griswold's sentence, the district court granted the two-level reduction for acceptance of responsibility available under the 1990 guidelines. See U.S.S.G. § 3E1.1(a) (1990). Griswold now argues that the district court erred because it did not grant him a three-level downward adjustment -- the maximum reduction available for acceptance of responsibility under the 1993 version of the guidelines. Section 1B1.11 of the United States Sentencing Guidelines states in relevant part:

---

[10]. Additionally, the government reserved its right to argue contrary to the stipulation on appeal:

AUSA Winter:    Your honor, I just want to note for
                the record that by conceding that
                the defense's argument on the
                grouping issue had some merit, the
                Government is not waiving its right
                to argue subsequently on appeal,
                that your Honor was not in error by
                grouping as you did.  I simply
                wanted to state that for the
                record.

App. at 119.

> (a)   The court shall use the Guidelines
>       Manual in effect on the date that
>       the defendant is sentenced.
>
> (b)(1)   If the court determines that use of
> the Guidelines Manual in effect on the date
> that the defendant is sentenced would violate
> the ex post facto clause of the United States
> Constitution, the court shall use the
> Guidelines Manual in effect on the date that
> the offense of conviction was committed.
>
>    (2)   The Guidelines Manual in effect on a
> particular date shall be applied in its
> entirety.  The court shall not apply, for
> example, one guideline section from one
> edition of the Guidelines Manual and another
> guideline section from a different edition of
> the Guidelines Manual.  However, if a court
> applies an earlier edition of the Guidelines
> Manual, the court shall consider subsequent
> amendments, to the extent that such
> amendments are clarifying rather than
> substantive changes.

U.S.S.G. § 1B1.11 (1993).  Thus, Griswold maintains that the

district court violated the mandate of § 1B1.11(a) which requires

application of the 1993 guidelines.  However, because the use of

the § 2K2.1 would violate the ex post facto clause, the district

court applied the 1990 guidelines and then chose to follow §

1B1.11(b)(2) when calculating the number of points for acceptance

of responsibility under § 3E1.1.[11]

The question before the court is whether § 1B1.11(b)(2)

(the "one book rule") supersedes § 1B1.11(a) (use guidelines

effective on the date of sentencing) when the court is forced

---

[11].  As indicated above, § 1B1.11(b)(2) requires that only one
guideline manual should be applied to any given sentencing.  This
rule has become known in sentencing guidelines parlance as the
"one book rule."

because of ex post facto reasons to use an earlier version of the guidelines. Quite recently, in United States v. Corrado, __ F.3d __, No. 93-2086, 1995 WL 262608 (3d Cir. May 8, 1995), we had the opportunity to decide this very issue. In adopting the "one book rule" and bringing the Court of Appeals for the Third Circuit in conformity with the majority of other courts of appeals, we held:

> [§ 1B1.11(b)(2)] expressly prohibits district courts from doing precisely what [the defendant] suggests the district court here should have done -- namely, to mix and match provisions from different versions of the guidelines in order to tailor a more favorable sentence. Because of its prohibitive nature, as well as the fact that we believe applying various provisions taken from different versions of the guidelines would upset the coherency and balance the Sentencing Commission obviously intended in promulgating the guidelines, we conclude that section § 1B1.11(b)(2) is binding and, as such, was properly followed by the district court in this case.

Corrado, 1994 WL 262608, at *2 (citation omitted). Because Corrado is directly on point, we will affirm the district court's application of the "one book rule."


V.  CONCLUSION

We conclude that the district court did not err in applying and interpreting the Sentencing Guidelines, and we will affirm the sentence of Griswold in all respects.