NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2920
_____

UNITED STATES OF AMERICA

v.

WILLIAM HEISER,
                                        Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 4-04-cr-00270-001)
District Judge:  Hon. William W. Caldwell
_____

Submitted Under Third Circuit LAR 34.1(a)
March 29, 2012

Before:   FUENTES, SMITH, and JORDAN, *Circuit Judges*.

(Filed: March 30, 2012)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

William Heiser appeals from a judgment of the United States District Court for the

Middle District of Pennsylvania sentencing him to 282 months' imprisonment and 15

years' supervised release as a result of his convictions for producing and receiving child

pornography.  Heiser challenges the District Court's rulings denying his motion to

dismiss his indictment, or, in the alternative, to suppress evidence, and denying his motion to continue jury selection. Heiser also brings various challenges related to his sentence. For the following reasons, we will affirm.

## I.      Factual Background and Procedural History

### A.      *Factual Background*

On May 6, 2004, Heiser's then fifteen-year-old adopted daughter, J.H., informed a school resource officer employed by the Berwick Police Department that Heiser began sexually abusing her when she was nine years old.[1] The Berwick Police Department initiated a criminal investigation, and, on May 18, 2004, executed a search warrant at Heiser's residence, resulting in the seizure of, among other things, his computer. The computer was turned over to the Pennsylvania State Police for forensic analysis, and a police computer crime analyst, Dale Young, proceeded to make a mirror image of the computer's hard drive. Due to the hard drive's poor condition,[2] Young initially had difficulty with that task but was eventually successful. Examination of that mirror image revealed 495 images of child pornography in unallocated space[3] and 21 images of child pornography in allocated space. Sexually explicit pictures of J.H. were recovered among those images. The original mirror image of the hard drive was stored on a state police

---

[1] On May 26, 2005, Heiser was convicted in Pennsylvania state court on charges of involuntary deviate sexual intercourse, statutory sexual assault, aggravated indecent assault, and sexual abuse of children, for which he received an aggregate sentence of 12 years and 10 months to 27 years.

[2] The hard drive cooling fan was inoperable, and the computer was covered in pet hair.

[3] During forensic recovery efforts, computer files deleted by a computer user may be found in unallocated space on a hard drive.

forensic storage device. The state police returned to the Berwick Police Department the original computer and hard drive, along with a CD that contained a copy of the mirror image and a CD with the child pornography images.

B.    *Procedural History*

On August 8, 2004, Heiser was indicted in the District Court for production of child pornography, in violation of 18 U.S.C. § 2251(b) ("Count One"), and receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2) ("Count Two"). He responded by filing a motion to compel production of the mirror image of the hard drive, and the District Court granted that motion. When attempting to comply with the Court's order, however, Young discovered that the storage device which contained the mirror image of Heiser's hard drive had crashed and, therefore, that the mirror image was no longer accessible. Young requested that the Berwick Police Department provide him with the back-up copy of the mirror image previously given to them. The department, however, was unable to locate the CD with that data. Young then attempted to create a new mirror image using Heiser's original hard drive, but the attempt was unsuccessful due to the hard drive's deteriorated condition. The Berwick Police Department still had possession of the CD that contained copies of the child pornography images originally retrieved from Heiser's hard drive, and the government provided a copy of that CD to Heiser but did not disclose to him the unsuccessful efforts to recover the mirror image until almost two months later.

After learning that he was not going to receive a copy of the mirror image, Heiser filed a motion seeking dismissal of the indictment, or, in the alternative, suppression of

3

all of the computer evidence.  The District Court held an evidentiary hearing and denied

that motion because it found there was no evidence that the government had acted in bad

faith, and, despite not having a copy of the mirror image, Heiser still had "the necessary

discovery in his possession in order to prepare a defense."  (App. 289.)

Over two years later, and after the District Court had granted over a dozen

continuances sought by Heiser, the Court authorized Reclamere, Inc., a forensic data

recovery business, to perform a forensic data recovery operation on Heiser's original hard

drive.  Reclamere was ultimately successful in reading data from roughly 97% of the hard

drive's surface, and it issued a "Certified Data Recovery Outcome Report" on

December 11, 2008, which was provided to Heiser's counsel for review.  Using the

recovered data, Young found, in unallocated space, 490 of the 495 images of child

pornography that had been previously copied onto a CD provided to Heiser.[4]

After the District Court granted seven additional motions to continue filed by

Heiser, it scheduled jury selection for April 27, 2010.  On the evening of April 26, 2010,

Heiser filed another motion to continue jury selection and trial, based on the

government's alleged failure to provide him with a list of files that would be used at trial

and the consequent failure to allow defense experts to search those files for any metadata

that existed.[5]  Prior to the scheduled jury selection the following day, the Court conferred

---

[4] Defense counsel had an opportunity to review the 21 images originally recovered from allocated space on an evidence CD.

[5] Metadata is "data about data" that "helps to describe the contents of the file and the characteristics of the file."  (App. at 827a.)  Metadata includes information regarding "the date [a] file was actually created, the date [a] file went on [a] system, the last date

4

with counsel to discuss the pending motion.  During that hearing, Heiser's counsel emphasized the importance of defense experts having enough time prior to trial to analyze the recovered files for any metadata that might exist.  Heiser's counsel admitted that, "based on the motions and other things that are in progress and the discussions that [he] had with Reclamere, [he] believe[d] that [such analysis] [could] be ready for trial," (App. at 303a) but that he had filed the motion to continue because Heiser had directed him to do so.  The District Court denied the continuance and trial commenced on May 10, 2010.

During trial, J.H. testified that Heiser had taken pictures of her in various stages of undress and that some of those pictures captured sexual acts between her and Heiser as they occurred.  She said that Heiser would sometimes view those pictures on the computer with her, and critique them.  During those critiques, Heiser would show her other child pornography on the computer and suggest that she and Heiser engage in sexual acts similar to what they had viewed.  J.H. expressed that she "thought it was normal …," "didn't know any better," and "thought [that] is just how it [was supposed to be] … with a child and a father."  (App. at 422a.)  On May 19, 2010, the jury found Heiser guilty on both Counts of the indictment.

C.     *Sentencing*

---

that the data inside [a] file was modified, or the last date that that file was accessed by an application." (App. at 827a.)  It could also reveal the last person to access a file, or the person who actually created it.

The probation officer circulated an initial pre-sentence report ("PSR") on November 30, 2010, which calculated a sentencing guideline range of 180-188 months. On January 14, 2011, Heiser filed numerous objections to the report, which, if adopted, would have resulted in a calculated advisory guideline range of 135-168 months. The government did not lodge any objections to that PSR. On April 29, 2011, a revised PSR was circulated that adopted the majority of Heiser's objections. However, it also included other changes that were not among Heiser's objections. Specifically, the revised PSR included, among other revisions, a two level-enhancement for using a computer to solicit participation with a minor in sexually explicit conduct, and a five-level enhancement for engaging in a pattern of activity involving prohibited sexual conduct. The changes in the revised PSR resulted in a guidelines sentencing range of 324-405 months. The District Court permitted Heiser to object to the revised PSR, but it subsequently overruled those objections. The Court ultimately sentenced Heiser to 282 months' imprisonment, 240 months on Count One and 42 months on Count Two, to run concurrently with his previously-imposed state sentence. *See supra* note 1. This timely appeal followed.

## II. Discussion[6]

On appeal, Heiser argues that the District Court erred in denying his motion to dismiss, or, in the alternative, to suppress evidence, and he also asserts that the Court abused its discretion in denying his final motion to continue. Heiser further brings three challenges related to his sentencing, claiming that his right to due process was violated by the revisions made to portions of the initial PSR, that the Court erred in assessing a two-level increase under U.S.S.G. § 2G2.1(b)(3), and that the Court erred in assessing a five-level increase under U.S.S.G. § 4B1.5(b)(1). We reject all of Heiser's contentions.[7]

### A. *Motion to Dismiss/Suppress*[8]

Heiser first argues that the District Court erred in denying his motion to dismiss the indictment, or, in the alternative, to suppress the computer evidence. He says that the computer evidence "clearly had important exculpatory value," (Appellant's Br. at 18) and claims that his due process rights were violated since he was deprived of the opportunity "to have [his] own expert undertake an evaluation of the hard drive information for the purpose of securing the exculpatory information contained thereon." (Appellant's Br. at 15.)

---

[6] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

[7] Heiser also contends that, because of those three alleged sentencing errors, his sentence was unreasonable. Because we reject his other sentencing-related claims, we also reject his challenge to the reasonableness of his sentence.

[8] We review a denial of a motion to dismiss or suppress "for clear error as to the underlying factual findings and exercise[] plenary review of the District Court's application of the law to those facts." *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).

7

We disagree. First, the evidence that was allegedly "destroyed" was substantially recovered through a forensic data recovery operation, and that data was provided to Heiser prior to trial. Second, even assuming *arguendo* that the forensic data recovery did not afford Heiser with the equivalent level of information that the actual hard drive, or mirror image copy, would have provided, Hesier's due process claim still fails. Although destruction of evidence may constitute a due process violation, *California v. Trombetta*, 467 U.S. 479, 489 (1984), "[a] defendant who claims destroyed evidence might have proved exculpatory … has to show the prosecution's bad faith in ordering or permitting its destruction," *United States v. Deaner*, 1 F.3d 192, 200 (3d Cir. 1993). Absent proof of bad faith, "failure to preserve evidence that might be of use to a criminal defendant … is not a denial of due process." *Id.* (citing *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)). To prove bad faith, the Supreme Court has explained that there must be a "showing that the Government intentionally [acted] to gain some tactical advantage over [the defendant] … ." *Youngblood*, 488 U.S. at 57 (citation and internal quotations marks omitted); *see Trombetta*, 467 U.S. at 488 (explaining bad faith as "official animus toward[] [a defendant] or … a conscious effort to suppress exculpatory evidence").

Heiser has not proven that the government acted in bad faith. Neither the catastrophic failure of the computer storage device nor Young's inability to create a second mirror image from Heiser's original hard drive rises to the level of an intentional act to gain a tactical advantage over Heiser. *Youngblood*, 488 U.S. at 57. Heiser's own expert witness acknowledged that he had experienced unexpected crashes while working with computers, and that expert confirmed that he did not believe that the government

8

intentionally damaged Heiser's hard drive.[9]  Although the Berwick Police Department's loss of the back-up copy of the mirror image might be characterized as negligent, Heiser has failed to demonstrate any "official animus [was directed] towards [him] or … [that there was] a conscious effort to suppress exculpatory evidence." *Trombetta*, 467 U.S. at 488; *see Youngblood*, 488 U.S. at 58 (finding no bad faith where the failure of police to preserve evidence "[could] at worst be described as negligent").  Therefore, the District Court did not err in denying Heiser's motion to dismiss the indictment, or, in the alternative, suppress the evidence.

B.    *Motion to Continue Jury Selection and Trial*[10]

Heiser next contends that the District Court abused its discretion when it denied his final motion to continue because, he says, the Court knew that the government still needed to provide him with metadata from the files recovered from Reclamere and that "metadata was crucial information that needed to be … absorbed so that the defense could properly move forward."  (Appellant's Br. at 29.)

Trial judges "are given wide latitude" in deciding whether to grant a continuance, although "a rigid insistence on expedition in the face of a justifiable request for delay can amount to a constitutional violation." *United States v. Rankin*, 779 F.2d 956, 960 (3d Cir. 1986).  "Because there is no mechanical test[] to determine where there exists a violation of due process, courts must examine the particular circumstances of each case." *United*

---

[9] The expert witness admitted, moreover, that the drive was also not performing optimally when originally seized from Heiser.

[10] We review a District Court's denial of a motion for continuance for abuse of discretion. *United States v. Olfano*, 503 F.3d 240, 245 (3d Cir. 2007).

*States v. Olfano*, 503 F.3d 240, 245-46 (3d Cir. 2007) (alteration in original) (citation and internal quotation marks omitted). When deciding on a motion to continue, a district court should consider both "the efficient administration of criminal justice [and] the accused's rights … ," *id.* at 246 (citation omitted), which "includ[es] an adequate opportunity to prepare a defense … ," *United States v. Kikumura*, 947 F.2d 72, 78 (3d Cir. 1991) (citation omitted). A court may also consider the diligence of counsel in requesting a continuance and the timeliness of the request. *See United States v. Fisher*, 10 F.3d 115, 117, 118 (3d Cir. 1993) (finding motion for a continuance filed approximately ten days before jury selection after the Court "had already granted numerous continuances and had put off the scheduled trial date for eight months" to be "unjustifiable").

Looking at the particular circumstances of this case, the District Court did not abuse its discretion in denying the motion to continue. At the continuance hearing, Heiser's own counsel told the Court that defense experts would have enough time to analyze the forensic report prior to trial and that he had only filed the motion because Heiser wanted him to. Moreover, that motion to continue, one of over two dozen filed by Heiser over the course of four years, was not filed in a timely manner, as it came on the eve of jury selection. In light of those facts, the District Court did not abuse its discretion in denying the motion to continue.

C.      *Sentencing Claims*[11]

1.      *Revised PSR*

Heiser contends that the probation officer's revisions to "unobjected to" portions

of the initial PSR, which resulted in an increase in the recommended sentencing range,

constituted a violation of his due process rights.  (Appellant's Br. at 33.)  Federal Rule of

Criminal Procedure 32(f) addresses objections to a pre-sentence report, providing, in

pertinent part, that "[a]fter receiving objections, the probation officer may meet with the

parties to discuss the objections.  The probation officer may then investigate further and

revise the presentence report as appropriate."  Fed. R. Crim. P. 32(f)(3).  Despite Heiser's

contention to the contrary, nothing in that rule limits the probation officer's review to

those portions of the report that have drawn objections.  Thus, revisions can be made to a

pre-sentence report with or without objections from the parties.  The revisions that Heiser

specifically challenges, as discussed herein, *infra* Part II.C.2-3, were appropriate.

Moreover, the Court gave Heiser an opportunity to object to the revisions.  Accordingly,

the revisions did not constitute a violation of Heiser's due process rights.

2.      *Two-Level Increase Under U.S.S.G. § 2G2.1(b)(3)*

Heiser contends that the District Court erred in applying the two-level offense

increase under the 2003 version of U.S.S.G. § 2G2.1(b)(3) because he did not use a

---

[11] We exercise plenary review over the District Court's interpretation of the Federal Rules of Criminal Procedure.  *United States v. Toliver*, 330 F.3d 607, 610 (3d Cir. 2003) (citation omitted).  Our review of a district court's application of the sentencing guidelines is also plenary, and we review the Court's factual determinations for clear error.  *United States v. Aquino*, 555 F.3d 124, 127 (3d Cir. 2009) (citations omitted).

computer to solicit participation with J.H. in sexually explicit conduct. The 2003 version

of § 2G2.1(b)(3) provides:[12]

> If, for the purpose of producing sexually explicit material, the offense
> involved (A) the knowing misrepresentation of a participant's identity to
> persuade, induce, entice, coerce, or facilitate the travel of, a minor to
> engage [sic] sexually explicit conduct; or (B) *the use of a computer or an
> Internet-access device to* (i) persuade, induce, entice, coerce, or facilitate
> the travel of, a minor to engage in sexually explicit conduct, or to otherwise
> solicit participation by a minor in such conduct; or *(ii) solicit participation
> with a minor in sexually explicit conduct, increase by 2 levels*.

U.S.S.G. § 2G2.1(b)(3) (2003) (emphasis added).

Here, Heiser did use a computer to solicit J.H. to participate in sexually explicit

conduct. He took sexually explicit photographs of her and placed them on his computer.

He would later review those pictures with her to critique them and propose suggestions

on how to improve certain poses. Heiser also showed J.H. child pornography on the

computer and suggested that they try some of the sex acts that they had viewed. *See*

*United States v. Reaves*, 253 F.3d 1201, 1205 (10th Cir. 2001) (applying the same two-

---

[12] Pursuant to U.S.S.G. § 1B1.11(b), the 2003 edition of the Guidelines Manual, rather than the 2010 version, was used in calculating Heiser's sentence because the use of the 2010 version would have resulted in a more severe advisory guideline range. *See* U.S.S.G. § 1B1.11(b)(1) ("If the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the *ex post facto* clause … the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed."); *United States v. Corrado*, 53 F.3d 620, 622-23 (3d Cir. 1995) (internal citations omitted) ("When … the retroactive application of the version of the guidelines in effect at sentencing results in more severe penalties than those in effect at the time of the offense, the earlier version controls, since … to apply a change in the guidelines that enhances the penalty would offend the *ex post facto* clause of the United States Constitution."). Accordingly, the 2003 Guidelines were applied in determining Heiser's sentence. *See* U.S.S.G. § 1B1.11(b)(2) ("The Guidelines Manual in effect on a particular date shall be applied in its entirety.").

level enhancement because defendant had showed images of child pornography on his computer to children "in order to entice and lure [them] into sexual relationships for the purpose of producing sexually explicit materials"). Furthermore, J.H. also expressed that viewing such material led her to believe that such conduct was normal. *See United States v. Brown*, 237 F.3d 625, 629 (6th Cir. 2001) (applying the same two-level enhancement because the victims, by viewing the child pornography, "were given the impression that this [was] acceptable conduct, [which] aid[ed] [defendant] in continuing to film them," and "[i]n using the computer to desensitize his victims to deviant sexual activity, [defendant used] it to solicit participation in that activity"). Accordingly, the Court properly applied the two-level offense increase under the 2003 version of § 2G2.1(b)(3).

### 3. *Five-Level Increase Under U.S.S.G. § 4B1.5(b)(1)*

Heiser additionally argues that the District Court erred in applying the five-level enhancement for a pattern of activity involving sexual abuse or exploitation of a minor under U.S.S.G. § 4B1.5(b)(1), because, he contends, abuse of a single victim is insufficient to establish a pattern of sexual abuse or exploitation. Section 4B1.5(b)(1) provides that, "[i]n any case in which the … conviction is a covered sex crime … and the defendant engaged in a pattern of activity involving prohibited sexual conduct[,] … [t]he offense level shall be [increased by] 5 … ." U.S.S.G. § 4B1.5(b)(1) (2003). The commentary to subsection (b) provides that a "defendant [has] engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." U.S.S.G. § 4B1.5(b)(1) cmt. n. 4(B)(i).

13

Heiser clearly engaged in a pattern of activity involving prohibited sexual conduct. He sexually abused J.H. over the course of a number of years. Moreover, he took many sexually explicit photos of J.H. and placed them on his computer. The commentary to § 4B1.5(b)(1) specifically forecloses Heiser's argument that a single victim is insufficient to establish a pattern of activity involving prohibited sexual conduct. Therefore, the District Court's application of the five-level enhancement under U.S.S.G. § 4B1.5(b)(1) was appropriate.

## III.  Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.