

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-12-1995

# United States v Bush

Precedential or Non-Precedential:

Docket 94-2025

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"United States v Bush" (1995). *1995 Decisions*. Paper 163.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/163

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-2025


UNITED STATES OF AMERICA

v.

THERESA J. BUSH

Theresa Bush,

<u>Appellant</u>



On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 94-0185)


Submitted under Third Circuit LAR 34.1(a)
May 22, 1995

BEFORE:  GREENBERG, ROTH, AND ALDISERT, <u>Circuit</u> <u>Judges</u>

(Filed: June 12, 1995)


David L. McColgin
Assistant Federal Defender
Elaine De Masse
Senior Appellate Counsel
Maureen Kearney Rowley
Chief Federal Defender
Defender Association of
Philadelphia
Federal Court Division
437 Chestnut St., Suite 800
Lafayette Building
Philadelphia, PA  19106

<u>Attorneys for Appellant</u>

Michael R. Stiles
United States Attorney

                              Walter S. Batty, Jr.
                              Ronald H. Levine
                              Assistant United States
                    Attorneys
                              Suite 1250
                              615 Chestnut Street
                              Philadelphia, PA 19106

                                   <u>Attorneys for Appellee</u>

OPINION OF THE COURT

GREENBERG, <u>Circuit Judge</u>.

### I.  Introduction

On April 26, 1994, a federal grand jury returned a multi-count indictment charging Theresa J. Bush with five counts of making false statements in connection with the acquisition of a firearm in violation of 18 U.S.C. § 922(a)(6) (the false statement counts), and five counts of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (the possession counts).  On July 13, 1994, Bush plead guilty to one false statement count and one possession count.  However, Bush stipulated to having committing the other eight charged offenses, and "agree[d] that, for the purpose of determining [her] Sentencing Guidelines range, . . . these additional offenses shall be treated as if the [she] had been convicted of additional counts charging these offenses."  App. 14.

The prosecutor and the defense attorney submitted sentencing memorandums addressing two issues to the district court: (1) which Sentencing Guidelines Manual applies to Bush's sentence; and (2) how the multiple counts should be grouped. At the October 14, 1994, sentencing hearing the prosecutor conceded that because of potential ex post facto problems, the 1990 Guidelines Manual should apply. See, e.g., United States v. Bertoli, 40 F.3d 1384, 1403 (3d Cir. 1994) (although "[g]enerally, the sentencing court must apply the Guidelines Manual in effect at the time of sentencing . . . '[w]here such retroactivity results in harsher penalties, Ex Post Facto Clause problems arise, and courts must apply the earlier version.'") (citation omitted).[1] The district court then divided the offense conduct into three separate groups, and, pursuant to U.S.S.G. § 3D1.4, computed Bush's offense level to be 13.[2]

The district court thereupon sentenced Bush to concurrent 16-month custodial terms, to be followed by concurrent 3-year terms of supervised release. On October 21, 1994, Bush

---

[1]. The 1990 Guidelines Manual was in effect at the time Bush committed the crimes to which she pleaded guilty. The 1993 Guidelines Manual is substantially different with respect to firearms offenses, but those differences are not relevant here. In this opinion our citations are to the 1990 manual.

[2]. The relevant firearms guideline, section 2K2.1(a)(2), provided a base offense level of 12. When three groups are created that charge equally serious offenses, section 3D1.4 directs a court to increase the offense level by 3 which the district court did. The court then subtracted 2 levels pursuant to section 3E1.1 because it found that Bush had accepted responsibility for her criminal conduct. Thus, the district court computed the offense level to be 13.

filed a timely notice of appeal of her sentence.  We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).  The district court had jurisdiction pursuant to 18 U.S.C. § 3231.  We will affirm.

## II.  Discussion

The sole issue on this appeal is whether the district court erred in dividing the offense conduct into three groups.  "This contention requires a construction of the guidelines so that our scope of review . . . is plenary."  United States v. Riviere, 924 F.2d 1289, 1304 (3d Cir. 1991).  Of course, we review the district court's findings of fact leading to its grouping determination only for clear error.

Section 3D1.1(a) of the Sentencing Guidelines directs courts to combine multiple counts of conviction into "'distinct Groups of Closely Related Counts'" when certain criteria are met.  United States v. Bertoli, 40 F.3d at 1401 (quoting U.S.S.G. § 3D1.1(a)).  This practice of "grouping," as it has come to be called, was designed "to prevent multiple punishment for substantially identical offense conduct, while still ensuring incremental punishment for significant additional criminal conduct."  United States v. Wessells, 936 F.2d 165, 168 (4th Cir. 1991).  In accommodating these concerns, courts must distinguish between occasions when increasing the punishment for an additional count would punish the defendant for conduct taken into account in another count and those occasions when the added counts reflect additional criminal culpability.  The guidelines

provide in this regard that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group", U.S.S.G. § 3D1.2, and define "substantially the same harm" as follows:

(a)  When counts involve the same victim and the same act or transaction.

(b)  When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

(c)  When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

(d)  When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

U.S.S.G. § 3D1.2.  While section 3D1.2 contains lists of specific offenses that should and should not be grouped, firearm offenses fall into neither category.  Therefore, in firearms cases "a case by case determination must be made based upon the facts of the case and the applicable guidelines (including specific offense characteristics and other adjustments) used to determine the offense level."  Section 3D1.2(d).  We previously have noted the relevance of application note 2 to firearms offenses, which provides that when crimes involve "indirect or secondary victims 'the grouping decision must be based primarily upon the nature of

the interest invaded by each offense.'"  United States v.

Riviere, 924 F.2d at 1304 (citing U.S.S.G. § 3D1.2).

     The parties do not dispute the facts constituting the offense conduct:  On ten occasions between September 29, 1990, and November 29, 1990, Bush travelled to Lou's Loan of Upper Darby, Pennsylvania, a licensed gun dealer.  On five of those trips she applied to buy various handguns, and in so doing, failed to acknowledge a prior felony conviction.  On the other five trips she purchased the guns for which she had applied.

     The district court grouped each false statement count with its corresponding possession count; after that grouping, the district court chronicled Bush's actions as follows:

    10/04/90: Bush purchases her first handgun, a .32 New England revolver.

    10/12/90: Bush purchases her second handgun, a .380 caliber Davis semi-automatic;

    10/13/90  Bush purchases her third handgun, a 9mm caliber Taurus semi-automatic;

    11/01/90  Bush purchases her fourth handgun, a .380 caliber Beretta semi-automatic;

    11/29/90  Bush purchases three .380 caliber Davis semi-automatic handguns and one 9 mm caliber Tanfoglio semi-automatic handgun.

     Then the court analyzed which of the offenses were distinct and which were coextensive and therefore involved substantially the same harm.  Beginning with the premise that if Bush bought the guns for different purposes then different harms

were involved, the court reviewed the record and determined that she had given inconsistent explanations for the purchases. On December 4, 1992 she informed agents of the Bureau of Alcohol Tobacco and Firearms (ATF) that she bought the guns because she and her husband liked to target shoot at "Colosimo's range," see PSR at 2 ¶ 7.[3] But she told the probation officer during the presentence investigation that she bought the guns as protection for her mother and sisters. See PSR at 2 ¶ 10. The district court partially believed Bush's explanations, but concluded that "these lawful purposes only account for four of the guns. They cannot plausibly explain the purchase of four additional semi-automatic weapons on November 29, 1990." Op. at 6. The court thus inferred that there was a third "mystery motive" for the purchases.

Additionally, relying on the chart quoted above, the court characterized Bush's gun-purchasing activity as naturally dividing into three time frames: October 4 through October 13, 1990; November 1, 1990; and November 29, 1990. Reasoning that while in a broad sense Bush's purchases could be considered "ongoing, . . . their temporal separation cannot fairly be regarded as continuous," op. at 7, the court concluded that "[t]he timing and manner of Bush's purchases confirms our creation of three groups." Op. at 6. The district court found

---

[3]. At the sentencing hearing, defense counsel offered no objections to the factual findings in the PSR, other than to the probation officer's conclusion that the 1993 Sentencing Guidelines Manual should apply. App. 66.

still further support for its grouping decision in its observation that "the handguns . . . are of three different calibers and from five different manufacturers."  Op. at 6.

Bush first argues that the general thrust of the guidelines supports a single group.  In this regard, she points to the application note to U.S.S.G. § 3D1.2 for the proposition that firearms offenses presumptively should be grouped together.  That application note states:

> Subsection (d) likely will be used with the greatest frequency.  It provides that most property crimes . . ., firearms offenses, and other crimes where the guidelines are based primarily on quantity or contemplate continuing behavior are to be grouped together.  The list of instances in which this subsection should be applied is not exhaustive.

U.S.S.G. § 3D1.2 application note 6.

Bush's reliance is misplaced.  Immediately following the application note, the guideline contains examples of when grouping is appropriate which shed light on the point the Sentencing Commission was making in the application note.  The pertinent example states that if "[t]he defendant is convicted of three counts of unlicensed dealing in firearms . . . [a]ll three counts are to be grouped together."  Suppose, for example, a defendant, unlicensed to deal in firearms, owns a pawn shop and has three guns for sale.  It might be unfair to increase the punishment for each additional gun, because the shopowner really was running a single business and engaged in a single continuous course of conduct.  Dividing the crime into three subdivisions

artificially would increase the punishment based not on additional criminal conduct but on the fortuity of the number of guns being sold.  That is precisely the type of result against which grouping is intended to guard, and it is the kind of situation covered by the application note.

But that grouping principle cannot be applied to all multiple firearms violations, for such an application would eviscerate the Commission's direction that such crimes are to be grouped on a case by case basis.  Moreover, it defies logic to say that all firearms violations committed by an individual in a narrow time frame necessarily involve substantially the same harm and invade the same protected interests.  People possess firearms for various reasons with various intentions.  While, broadly speaking, society is the victim of all possession crimes, each crime has its own nuances and must be evaluated on its own.  See United States v. Cousens, 942 F.2d 800, 808 (1st Cir. 1991) (a defendant "who purchased different firearms on different occasions for different purposes using funds from different sources, readily may be distinguished from a defendant who pleads guilty to three counts of unlicensed dealing in firearms") (pointing out limited utility of application note); see generally United States v. Griswold, No. 94-1979, slip op. at 9-10 (3d Cir. Jun. 5, 1995) (discussing application note).

Bush further argues that subsections 3D1.2(b) and (d) required the district court to classify the entire offense conduct as one group.  She contends that subsection (b) required grouping because "[t]he nature of the interest invaded by each of

the ten counts in this case was exactly the same -- the interest in keeping guns out of the hands of convicted felons" and therefore "Bush's 'criminal objective' was also the same -- the possession of handguns." Br. at 11. She argues subsection (d) required grouping because Bush's behavior was "ongoing and continuous in nature." Inasmuch as the arguments relating to both subsections are quite similar, namely that Bush's criminal conduct constituted one quick scheme of purchasing handguns, we will address them together.[4]

Other than the general principles detailed above, we are left with little direction from the Sentencing Commission. We take some guidance, though, from the limited case law addressing this issue. In Riviere, the defendant pled guilty to

---

[4]. In Riviere we pointed out the following inconsistency in the Sentencing Guidelines commentary:

> [T]he clarifying amendment, effective November 1, 1989, to the background commentary to the application notes to guidelines § 3D1.2 . . . provides that '[c]ounts involving different victims (or societal harms in the case of "victimless" crimes) are grouped together only as provided in subsection (c) or (d).' However, the application note discussing the term 'victim,' which appears in guidelines § 3D1.2(a) and (b), provides that, for victimless crimes in which society at large is the victim, 'the grouping decision must be based primarily upon the nature of the interest invaded by each offense.'

Riviere, 924 F.2d at 1305 (citations omitted). This inconsistency does not affect our analysis, however, because as we state in the text, Bush's arguments regarding (b) and (d) are nearly identical.

possession of a firearm by a felon, delivery of firearms to a common/contract carrier, and possession of an altered firearm. Relying on the general policies behind grouping, we held that the district court should have combined the offenses into a single group. First, "[t]he guidelines already provided for enhanced punishment for possession of a firearm by a felon if that firearm was altered." Riviere, 924 F.2d at 1306. Thus, section 3D1.2(c) mandated grouping, because one of the counts "embodies conduct that is treated as an . . . adjustment to the guideline applicable to another of the counts." Moreover, "grouping of the offenses of possession of a firearm by a felon and delivery to a common/contract carrier was required because to hold otherwise would provide enhanced punishment for Riviere's status as a felon, rather than his 'additional conduct that is not otherwise accounted for by the guidelines.'" Id. at 1306. Driving the analysis in Riviere was the fact that the defendant really pled guilty to one instance of unlawful conduct -- carrying altered firearms onto a chartered flight when he had been convicted previously of a felony -- and he should have been sentenced only once for his unlawful act; see Griswold, slip op. at 8 ("[B]ecause no additional conduct was represented by the additional counts [in Riviere], it was appropriate to group all of the firearms-related offenses."); Cf. U.S.S.G. § 3D1.2(a) (grouping appropriate when "counts involve the same victim and the same act or transaction").

More analogous is United States v. Cousens, 942 F.2d at 800. In that case, the court held that in determining how to

group firearms offenses, courts should consider "'differences in place, time, nature of the guns, lack of drugs, and intervening arrests.'" Id. at 807 (citation omitted). The court of appeals upheld the district court's decision to divide nine firearms counts into one group of seven counts, and two groups of one count each. The offenses underlying the group of seven occurred during a nine-day time period, involved purchases from the same cash pool, and were connected by a common scheme. The two remaining counts, however, involved, respectively, the purchase of a different type of gun from a different seller, and a purchase for a different purpose. Id. at 807. In response to the defendant's argument that all counts should have been grouped together, the court of appeals held that the defendant "did not demonstrate that his independent offenses . . . involved transactions connected by a common criminal objective or constituting part of a common scheme or plan with the grouped offenses." Id. at 808; but see United States v. Wessells, 936 F.2d at 168-69 (district court grouped several weapons purchases where the purchases evinced single schemes by the defendant "to supply himself with an arsenal").

If the district court in this case refused to group the possession counts with their corresponding acquisition counts, we would face a Riviere problem -- Bush's sentence would be increased because of her status. But this case is not like that at all; we do not face a situation in which the court sentenced her for discrete criminal acts from one instance of unlawful conduct. Nor can the purchases in this case be compared to those

leading to the single large grouping in Cousens. To the contrary, the undisputed facts indicate that Bush made five specific firearms purchases over a period of several months -- a far cry from the nine-day period in Cousens. And, contrary to the Cousens court's finding that the purchases were for a common scheme, Bush gave inconsistent explanations for her purchases. Furthermore, in light of the fact that we know little about where her firearms went,[5] her explanations are fairly incredible insofar as they apply to all the guns. While Bush apparently made all her purchases in cash from the same gun shop, there is nothing to indicate that the guns were bought from a particular cash pool to be used for a particular purpose. In fact, there is nothing in the record demonstrating that the purchases were tied in any respect; indeed Bush's shifting explanations support the contrary conclusion. In light of these facts, the district court probably would have acted well within its discretion had it inferred discrete motives from discrete purchases, and created five separate groups. See Griswold, slip op. at 8 (discussing similar fact pattern) ("We remain unconvinced that the Sentencing Commission contemplated grouping these offenses.").

Ironically, Bush is taking the district court to task because it may have treated her more leniently than she deserved. Instead of rejecting her explanations and treating each purchase as a separate discrete act, the district court gave Bush the

_____

[5]. One of the firearms was later found in the possession of a confidential informant in the World Trade Center bombing case. See app. 78-79.

benefit of the doubt and believed her explanations in part. And, the court added only one "mystery motive" to those explanations when it could have added two or three.

Nevertheless, Bush argues that the district court's "mystery motive" finding was clearly erroneous. She contends that the district court concluded that the family "protection" motive could not account for all the purchases but that it based this conclusion on its erroneous belief that Bush had only one sister. See Op. at 6 ("Bush . . . claimed to have purchased handguns . . . to give to her mother and sister for self-defense"). Bush is correct in noting that the district court erroneously believed she had only one sister. But the court had other justifications for inferring a mystery motive. First, the protection explanation was inconsistent with the target practice explanation, so the court reasonably could have concluded that Bush was trying to hide a third motive. Second, the district court plausibly was skeptical that a person would purchase semi-automatic weapons simply for protection. See app. 84 ("[W]hen somebody goes in and buys four semiautomatic weapons . . . it implies to me yet another purpose. That's what I'm concluding as to the basis for this.") (sentencing hearing). Finally, the undisputed evidence established that none of the weapons had reached the people Bush contended that they intended to protect. See PSR at 2 ¶ 10 (Bush "was unable to explain why the guns were never delivered to the intended recipients"). The district court was well within its discretion in concluding that there was a mystery motive.

Next, Bush argues that because her explanations "applied to all the guns she bought . . . [s]ince [she] never ascribed different explanations to different guns, these explanations simply cannot be used as a basis for creating separate groups."  Br. at 13.  We disagree.  The district court's finding must be examined in light of all of the evidence.  The record establishes both that Bush's husband was registered to shoot at Colosimo's Pistol Range, see app. 31, and that Bush has a mother and seven sisters.  In light of these facts, the district court could have believed that Bush's was telling partial truths each time she tried to explain the purchases.  However, Bush's evasive behavior on other occasions belied those explanations.  When interviewed by the ATF in 1992, Bush "would not say where the weapons were" but implied that she knew where they were.  PSR at 2 ¶ 7.  When interviewed on April 26, 1994, however, "Ms. Bush expressed that she no longer knew where the guns were."  PSR at 2 ¶ 7.  Along with the inconsistent explanations she gave, Bush also told the district court that she did not know why she purchased the guns.  See app. 93.

Moreover, the district court's decision to divide the offense conduct into three groups is supported by the timing of the offenses.  Cf. Griswold, slip op. at 8 (improper to group "purchases and possession of eight semi-automatic handguns spanning in excess of two years.").  The chart we reproduce above demonstrates that Bush's purchases occurred in three separate bursts of activity.  The district court properly relied on that fact to support its finding of three motives.

The judgment of conviction and sentence entered on October 17, 1994, will be affirmed.