

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-6-1998

# United States v. Vitale

Precedential or Non-Precedential:

Docket 98-5072

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

## Recommended Citation

"United States v. Vitale" (1998). *1998 Decisions.* Paper 258.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/258

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 6, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-5072

UNITED STATES OF AMERICA

v.

FRANCIS X. VITALE,
        Appellant

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 97-cr-00573)

Argued July 9, 1998

Before: SLOVITER, ROTH, Circuit Judges, and
FULLAM,* District Judge

(Filed November 6, 1998)

        Justin P. Walder (Argued)
        Walder, Sondak & Brogan
        Roseland, N.J. 07068

         Attorney for Appellant

        George S. Leone
        Amanda Haines (Argued)
        Office of United States Attorney
        Newark, N.J. 07102

         Attorney for Appellee

_____

* Hon. John P. Fullam, Senior United States Circuit Judge for the
Eastern District of Pennsylvania, sitting by designation.

OPINION OF THE COURT

SLOVITER, Circuit Judge.

In this case the principal issue we must decide is whether the offenses of wire fraud and tax evasion should be grouped together for sentencing purposes when the government stipulated that the conduct underlying the wire fraud charge was embezzlement. Appellant also raises an issue of his alleged entitlement to a downward departure for diminished mental capacity.

I.

On September 30, 1997, Francis X. Vitale entered a guilty plea to one count of wire fraud and one count of tax evasion pursuant to a plea agreement. He was charged in the wire fraud charge with causing $407,223.80 to be illegally wire transferred from Engelhard's account to an antique clock dealer in Switzerland. He was charged in the second count with failing to pay over $1,200,000 in income tax on taxable income of more than $3,700,000.

The charges against Vitale stemmed from his embezzlement of approximately $12 million from his employer, Engelhard Corporation, between 1987 and 1996. Vitale used this money to acquire and restore antique clocks, which he displayed in what has been described as a museum type gallery in Spring Lake, New Jersey. Vitale himself states that his collection was one of thefinest of 18th and 19th century European clocks.

Vitale had been employed for more than thirteen years by Engelhard, a specialty chemical and metal products manufacturer, most notably as the vice president of strategic development and corporate affairs. He controlled a multi-million dollar budget for domestic and international marketing and communications and had sole and unlimited authority to approve at least a million dollars in international marketing expenditures. Vitale forwarded fabricated invoices to Engelhard's cash management office, which received authorization to wire funds on the bogus

2

invoices to named vendors who were, in fact, European clock dealers who sold antique clocks to Vitale's shop. In addition, Vitale solicited the owner of Dimensional Marketing, Inc. to wire transfer funds and send checks to various vendors under the guise of helping Engelhard with a purported budgeting problem. These payments, however, went to vendors of Vitale's clock company, with Vitale approving payment of the invoices. Vitale failed to report any of the embezzled funds on his income tax returns.

When Vitale was confronted with these crimes by Engelhard's senior executives, he admitted his guilt and cooperated with Engelhard by providing complete restitution by selling his entire clock collection. Vitale's extraordinary cooperation in organizing the sale of his clocks was noted in several letters written by Engelhard employees. Vitale also volunteered full-time with the Boys & Girls Club of Trenton/Mercer Counties in 1997.

Vitale also underwent psychiatric counseling. Dr. Ventano, Vitale's treating psychiatrist, opined that Vitale was not motivated by greed or accumulation of wealth; instead, he had an obsession with antique clocks which overpowered his sense of right and wrong. Ventano observed that Vitale knew what he was doing was wrong, but could not stop himself.

This appeal concerns Vitale's sentence, which the district court calculated as follows:

Count one: Wire Fraud

| | |
|---|---|
| Base Offense Level [S2F1.1(a)] | 6 |
| Specific Offense Characteristic (Loss of $10 million to $20 million) [S2F1.1(b)(1)(P)] | 15 |
| Specific Offense Characteristic (More than minimal planning) [S2F1.1(b)(2)(A)] | 2 |
| Adjustment for Role in the Offense (Abuse of trust) [S3B1.3] | 2 |
| Adjusted Offense Level | 25 |

Count Two: Tax Evasion

| | |
|---|---|
| Base Level (Tax loss of $2,500,000 to $5,000,000) [S2T1.1(a)(1) and S2T4.1(P)] | 21 |

3

Specific Offense Characteristic
  (Failed to report source of income exceeding
  $10,000 from criminal activity) [S2T1.1(b)(1)]    2

        Adjusted Offense Level                 23

The district court rejected Vitale's argument that the wire fraud and tax evasion counts should be grouped. Therefore, under the multiple-count rules of Chapter 3 of the Sentencing Guidelines, Vitale's greater adjusted offense level of 25 was increased by two levels, based on the number of units, for a combined adjusted offense level of 27. Three levels were deducted for acceptance of responsibility, for a total offense level of 24, which corresponds (with a Criminal History Category of I) to a range of 51 to 63 months incarceration.

The court denied Vitale's request for a downward departure based on the government's alleged manipulation of the charging documents, app. at 94, and declined to further depart downward from the guideline range based upon Vitale's alleged reduced mental capacity, app. at 94. However, the court granted Vitale's motion for downward departure pursuant to U.S.S.G. S 5K2.0 due to Vitale's extraordinary acceptance of responsibility, restitution efforts, community service and post-offense rehabilitation. Thus, after all the calculations and the downward departure, Vitale was sentenced to thirty months imprisonment (concurrent on counts one and two), two years of supervised release (also concurrent on counts one and two), and 500 hours of community service. App. at 95–96. Vitale appeals.

II.

A.

GROUPING

Vitale argues that the district court erred in denying his request to group the two charges. We give deference to a district court's grouping decision, see United States v. Selingsohn, 981 F.2d 1418, 1426 (3d Cir. 1992) (citation

4

omitted), and we review its factual findings leading to a grouping determination for clear error, see United States v. Bush, 56 F.3d 536, 537–38 (3d Cir. 1995). However, we have plenary review of the district court's interpretation of the Sentencing Guidelines. See United States v. Rudolph, 137 F.3d 173, 178 (3d Cir. 1998) (citations omitted).

Vitale premises his argument for grouping on U.S.S.G. S 3D1.2, which instructs as follows: "All counts involving substantially the same harm shall be grouped together into a single Group." The Guideline then sets forth four circumstances which involve the same harm and in which counts are to be grouped together.1 The Guideline also lists certain offenses that must be grouped and certain offenses which are excluded from grouping.

Vitale relies on the subsection that provides that counts involve "substantially the same harm" when, inter alia, one of the counts "embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." S 3D1.2(c). Vitale contends that because the offense level for

_____

1. The relevant portion of the Guidelines for Groups of Closely Related Counts provides:

> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:
>
> (a) When counts involve the same victim and the same act or transaction.
>
> (b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.
>
> (c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.
>
> (d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

U.S.S.G. S 3D1.2.

5

his tax count was increased two levels under S 2T1.1(b)(1) because the unreported income was derived from his criminal activity, i.e., the wire fraud charged in count one, the wire fraud "embodies conduct that is treated as a specific offense characteristic of the tax evasion count" and therefore grouping is required.

This court dealt with a comparable situation in United States v. Astorri, 923 F.2d 1052 (3d Cir. 1991), where defendant, a stockbroker who defrauded various vulnerable investors, pled guilty to one count of wire fraud and one count of income tax evasion. Astorri sought to have the counts grouped under U.S.S.G. S 3D1.2(c) arguing, as Vitale does, that "the fraud count embodies conduct treated as a specific offense characteristic under the tax evasion offense." Id. at 1056. We disagreed. We noted that because the Sentencing Commission listed the failure to report criminally-derived income as a Specific Offense Characteristic for tax evasion in order to deter concealment of such income, it would negate that deterrence were that designation the basis for grouping. Id. at 1057.

It is difficult to see why our reasoning in Astorri is not apposite here. Like Astorri, Vitale pled guilty to wire fraud, 18 U.S.C. S 1343, and tax evasion, 26 U.S.C.S 1701. As in Astorri, the counts here involve different victims (Engelhard and the United States), different harms, and different types of conduct. As explained in Astorri, the tax evasion count represents significant criminal conduct in addition to the fraud count, and therefore the two counts are not so closely related that such grouping is required. See also United States v. Bissell, 954 F. Supp. 841 (D.N.J. 1996) (refusing to group mail fraud and tax fraud counts in reliance on Astorri), aff'd, 142 F.3d 429 (3d Cir. 1998) (Table).

Vitale argues that this case is not controlled by Astorri because although he, like the defendant in Astorri, was charged with fraud, the government stipulated with him in the plea agreement that "the conduct underlying the wire fraud offense is embezzlement." App. at 16, P 8. Vitale then argues that grouping is appropriate when the government has brought charges of both embezzlement and tax evasion, an issue we left open in United States v. Lieberman, 971 F.2d 989 (3d Cir. 1992).

6

Lieberman was a former bank vice president who pled guilty to bank embezzlement and attempted income tax evasion. In setting the sentence, the district court departed downward for inappropriate manipulation of the indictment, and the government appealed. We upheld the district court's discretion in that regard, and, in the course of our discussion, observed that Lieberman made a plausible argument that "a case involving tax evasion and embezzlement, which necessarily involves a taking of moneys, funds, assets or securities, is distinguishable from a case involving tax evasion and wire fraud, which does not necessarily generate criminally-derived income by the taking of money or property, [but] we leave that issue for another day." Id. at 997 (citations, footnotes, and quotation omitted).

There are several significant differences in this case from Lieberman. In the first place, in Lieberman we were affirming a discretionary sentencing decision of the district court. That is far different from using a similar argument to overturn the district court's choice of a sentence. In the second place, Vitale was indeed charged with fraud like Astorri, not with embezzlement, like Lieberman. In fact, there is no federal embezzlement charge that would have covered Vitale's actions. Finally, we did not hold in Lieberman that charges of embezzlement and tax evasion must be grouped; on the contrary, we left that issue for another day. As Vitale was not charged with embezzlement, this is not that other day.

Even though we believe the holding of Astorri is dispositive, we will consider Vitale's argument that he was entitled to have his offenses grouped under S 3D1.2(c). A defendant in Vitale's position would be substantially advantaged by grouping. If the counts were not grouped, under the multiple-count rules set forth in S 3D1.4 the offense level is determined by adding the requisite number of levels (one for the wire fraud count and one for the tax evasion count) to the higher offense level (25) applicable to wire fraud. This leads to an offense level of 27. On the other hand, if the counts were grouped under S 3D1.3, the offense level would be determined by the higher offense level, which is the 25 applicable to wire fraud.

7

If Vitale is correct that the tax evasion count should be grouped with the wire fraud count, there would be no accounting in the sentence for the fact that Vitale had evaded taxes, and in effect his conviction on that count would be washed away. However, the offense level for tax evasion is enhanced two levels under S 2T1.1(b)(1) because the defendant has failed to report income acquired from criminal activity. In other words, the enhancement is designed to deter and punish tax evaders who fail to report illegally-acquired income. See S 2T1.1(b)(1) and Background Commentary. Thus, under Vitale's interpretation, we would have the anomalous result that an enhancement designed to increase a sentence has the effect of reducing it. We see nothing in the guidelines for grouping that requires that result.

Vitale's textual argument is dependent upon interpreting the phrase that appears in the grouping guideline, "conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts," to encompass every "adjustment" to the offense level, whatever its consequence. The two-level enhancement to the tax evasion count (raising it from level 21 to 23) cannot affect the offense level of the higher wire fraud charge (25) which is the offense level used for the ultimate sentence, whether or not there has been grouping. Nor, in this instance, can it affect the multiple count enhancement under the formula in S 3D1.4. Because the two point adjustment to the tax evasion offense level has no significance to and does not in fact adjust the overall sentence, it does not cause the kind of "adjustment" referred to in S 3D1.2(c). We reject Vitale's textual argument.

We also believe it is contrary to the policies under the Guidelines. Although grouping is designed to "limit the significance of the formal charging decision and to prevent multiple punishment for substantially identical offense conduct," U.S.S.G. Ch. 3, Part D, Intro. Commentary, P 4, it is still supposed to provide "incremental punishment for significant additional criminal conduct." See U.S.S.G. Ch. 3, Part D, Intro. Commentary, P 2; see Bush, 56 F.3d at 538. Evading taxes on $12 million is patently "significant

8

additional criminal conduct" which would not be punished were Vitale's interpretation of S 3D1.2(c) to prevail. It would be an unreasonable application if S 3D1.2(c) were to apply in these circumstances and we decline to construe grouping unreasonably. It is significant that the grouping section is titled "Groups of Closely Related Counts;" and patently tax evasion and wire fraud are not closely related offenses.

We are not persuaded by the recent opinion in United States v. Haltom, 113 F.3d 43 (5th Cir. 1997), on which Vitale relies. There, like here, defendant was convicted of fraud and tax evasion. Although the court recognized that the mail fraud and tax evasion convictions did not cause "substantially the same harm," because the criminal activity associated with each count harmed different victims, it held they must be grouped because the mail fraud count "embodies conduct that is treated as a specific offense characteristic" of the tax evasion count. Id. at 46 (citing U.S.S.G. S 3D1.2(c)). As noted above, we disagree. The Haltom opinion discussed that there, unlike here, the tax evasion enhancement affected the defendant'sfinal offense level. See id. at 47 n.5. Whatever the rationale in Haltom, we decline to construe S 3D1.2(c) to encompass an adjustment effected by the tax evasion enhancement in a situation where the final offense level is not in fact adjusted.

We are also unpersuaded by Vitale's reliance upon the responses given in the Sentencing Commission's Most Frequently Asked Questions About the Sentencing Guidelines, Volume VII, Question No. 45, construing U.S.S.G. SS 3D1.2(c) and 2T1.1(b)(1). The response, which apparently emanated from the staff, is to the effect that tax evasion and the conduct generating the income should "always" be grouped, regardless of whether an enhancement under S 2T1.1(b)(1) was applied. The response fails to address circumstances where an intended penalty is transformed into a sentence reduction. Moreover, this section of the response includes a disclaimer:

> Information provided by the Commission's Training Staff is offered to assist in understanding and applying the sentencing guidelines. This information does not necessarily represent the official position of the

9

> Commission, should not be considered definitive, and is not binding on the Commission, the courts, or the parties in any case.

Id. Under the circumstances, we accord no weight to the response.

Finally, we note that in this case the district court made a substantial downward departure based on Vitale's acceptance of responsibility, service and rehabilitation. The 30-months sentence represents a 21-month departure from the bottom of the sentencing range. Vitale has shown nothing in the record to support his view that the district court would have departed yet further had grouping been utilized. Although we do not base our disposition on harmless error because we find no error, we note this fact in passing.

Accordingly, we find that the district court properly found that grouping under these facts was improper and we will affirm the district court on this issue.

B.

MANIPULATION OF THE CHARGING DOCUMENTS

Vitale's challenge to the district court's refusal to grant a downward departure for manipulation of the charging document does not differ in essence from his grouping argument. Relying upon Lieberman, 971 F.2d 989 (3d Cir. 1992), Vitale asserts that a downward departure is proper to compensate for the multiple counts when grouping is unavailable. Assuming that is so, our statement in Lieberman that nothing "forecloses the district courts from using their departure power to correct unwarranted sentencing disparities caused by charging decisions," id. at 998, does not suggest departure is required.

Here, the district court clearly understood it had power to depart but declined to exercise it. See app. at 94 ("[T]he question of manipulating the charging documents is one that in keeping with my discretion I choose not to entertain."). Accordingly, in the absence of any legal error by the district court regarding its power to depart, we lack

10

jurisdiction to consider whether the district court properly exercised its discretion. See United States v. Casiano, 113 F.3d 420, 429 (3d Cir.) (citation omitted), cert. denied, 118 S.Ct. 221 (1997); United States v. Miele, 989 F.2d 659, 668 n.11 (3d Cir. 1993).

C.

DIMINISHED MENTAL CAPACITY

Vitale contends that the district court erroneously believed it lacked the authority to grant a downward departure based on Vitale's diminished mental capacity, in particular, his compulsion to purchase antique clocks. We do not read the district court as so stating. UnderS 5K2.13, a departure may be granted where a defendant (1) has committed a non-violent offense, (2) while suffering from a significantly reduced mental capacity, (3) that was not caused by the voluntary use of intoxicants, (4) where defendant's mental incapacity contributed to the commission of the offense, and (5) so long as the defendant's criminal record does not indicate a need for imprisonment to protect public safety. See U.S.S.G. S 5K2.13.

Following the analysis used by the Supreme Court in Koon v. United States, 518 U.S. 81 (1996), we stated in United States v. McBroom, 124 F.3d 533 (3d Cir. 1997), that "[w]ith limited exceptions, mental and emotional conditions are discouraged factors; that is, they are not ordinarily relevant in determining whether a departure is warranted." Id. at 538. Vitale relies on the Guideline that provides that a sentence may be reduced to reflect "the extent to which reduced mental capacity contributed to the commission of the offense." U.S.S.G. S 5K2.13, and our remand in McBroom so that the district court could consider whether the evidence that McBroom "suffered from obsessive-compulsive disorder complicated by Cyclothymia, an after-effect of his childhood sexual abuse and a significant contributing factor in his possession of child pornography" warranted a departure on that ground. Id. at 550.

11

We review the district court's refusal to grant a downward departure due to Vitale's compulsion to purchase antique clocks for abuse of discretion. Koon, 518 US. at 98. In its analysis, the district court noted that disorders such as gambling and intoxication do not ordinarily warrant a diminished capacity reduction. App. at 91. The court also noted the length of time and sophistication of Vitale's criminal activities, and commented that Vitale did not use his personal money but only money obtained from his employer to feed his clock compulsion. See App. at 91-92. The court concluded that compared with other cases Vitale's compulsion did not rise to a level that warranted a downward departure. Because the district court did not misinterpret its authority and committed no error of law, we have no jurisdiction over its decision not to depart on this ground as well.

III.

For the reasons stated above, we will affirm the judgment of conviction and sentence.

FULLAM, Senior Circuit Judge, Concurring.

I concur in the judgment, because we are bound by the panel opinion in U.S. v. Astorri, 923 F.2d 1052 (1991). I believe, however, that the reasons given by the Astorri panel, and the majority's further elaboration of that reasoning, are incorrect.

Section 3D1.2(c) of the Guidelines clearly requires grouping of the counts in this situation, since the criminal conduct embodied in the mail fraud count is a specific offense characteristic of the tax count. Contrary to the view of the majority, this does not in any way frustrate the intent of the Commission to treat tax cases more harshly if the unreported income came from criminal activity. The guideline range for the tax count is still increased by two points. And under the grouping analysis, this would be directly reflected in the actual sentence, if the tax count were the more serious of the two counts. The anomaly perceived by the majority is entirely due to the fact that, here, the fraud count carries a higher guideline range, and concurrent sentencing is mandatory. The conduct which aggravated the tax violation is being punished in the fraud count.

It should be noted that all "specific offense characteristics" enhance the guideline range; accepting the majority's reasoning, there could never be grouping of counts on that basis; Guideline 3D1.2(c) would be a dead letter.

If free to do so, I would adopt the bright-line rule espoused by the staff of the Commission, and accepted by our sister-circuit in U.S. v. Haltom, 113 F.3d 43 (5th Cir. 1997). This is not, I respectfully suggest, an issue which should divide the circuits.

A True Copy:
Teste:

    Clerk of the United States Court of Appeals
    for the Third Circuit