

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-10-2002

# USA v. Cort

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-4155

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Cort" (2002). *2002 Decisions.* Paper 338.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/338

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 01-4155
_____

UNITED STATES OF AMERICA

v.

CHRISTOPHER LLOYD CORT,
                              Appellant
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Crim. No. 01-cr-00301
District Judge:  The Honorable John C. Lifland
_____

Submitted Under Third Circuit LAR 34.1(a)
June 6, 2002
_____

Before: SLOVITER, NYGAARD and BARRY, Circuit Judges

(Opinion Filed: June 7, 2002)
_____

OPINION OF THE COURT
_____


BARRY, Circuit Judge
        On June 27, 2001, Christopher Lloyd Cort pled guilty to knowingly and
intentionally conspiring to import approximately 500 grams of cocaine in violation of 21
U.S.C.    952 & 963.  At sentencing, the District Court imposed a 30 month term of
incarceration after declining to award a downward adjustment under the "minor role"
provision of the United States Sentencing Guidelines, or to grant a discretionary
downward departure under the "heartland" provision of the Guidelines.  On appeal, Cort
contends that the District Court made legal errors in construing these provisions.  We
have jurisdiction pursuant to 28 U.S.C.    1291 and 18 U.S.C.    3742, and will affirm.
        The parties are familiar with the facts of the underlying dispute and we will,
accordingly, discuss them only as necessary to resolve the issues presented.
        According to the Immigration and Naturalization Service, Cort first entered this
country from Jamaica on March 17, 1998 and illegally remained.  On February 6, 1999,
he married and later fathered a child.  When finances became tight, Cort elected to
conspire with others to import cocaine into this country.
        Cort alleges that he was brought into a drug trafficking conspiracy by a man only
known as "Yankee."  As part of this conspiracy, Cort recruited his co-defendant, Doreen
Rodriguez, to act as a drug courier on a round trip between the United States and
Jamaica.  Cort made all of Rodriguez's travel arrangements and paid her travel expenses.
Rodriguez received $3,000 in advance, and was promised another $3,000 after she
smuggled the drugs into the United States.
        Rodriguez flew to Jamaica on April 26, 2001 to meet with the drug suppliers
there.  When she learned that she would have to swallow some 80 pellets filled with
cocaine to carry out her mission, however, she balked.  The drug suppliers in Jamaica

called Cort to resolve the problem.  Cort spoke with Rodriguez, and there is some evidence, with which Cort does not take issue, indicating that during this phone conversation Cort convinced Rodriguez to swallow the pellets.  In any event, Rodriguez did swallow the cocaine laden pellets sometime shortly after this phone call.

On April 30, 2001, Rodriguez returned to the United States through Newark International Airport.  Cort was to meet Rodriguez at the airport and take her to Connecticut to collect the cocaine and pay her the outstanding $3,000.  Rodriguez, however, during a routine U.S. Custom's check at the airport, confessed to smuggling the cocaine.  When confronted by the authorities shortly thereafter, Cort himself confessed to participating in the cocaine importation conspiracy.  Cort admitted that he was to be paid by this mysterious "Yankee," who, according to Cort, had financed the botched importation.

As noted above, on appeal Cort raises two issues.  First, he contends that the District Court committed legal error in denying him a downward adjustment for playing a minor role in the conspiracy primarily because it failed to compare his culpability with that of participants other than Rodriguez.  Second, he claims that the District Court found that it lacked authority to grant a downward departure pursuant to U.S.S.G. § 5K2.0 based on the impact of the post-September 11, 2001 "war against terrorism" on the deterrence value of lengthy sentences for illegal aliens.  We will address each of these arguments in turn.  We exercise plenary review where, as here, it is alleged that the District Court made a legal error in interpreting the Guidelines.  United States v. Isaza-Zapata, 148 F.3d 236, 237 (3d Cir. 1998).

Section 3B1.2(b) of the Guidelines provides for a two-level downward adjustment of a defendant's offense level "[i]f the defendant was a minor participant in any criminal activity."  Cort had the burden of demonstrating the applicability of this adjustment.  Id. at 240.

We have held that the principles relevant to determining the application of § 3B1.2 are (1) the nature of the defendant's relationship to the other participants, (2) the importance of the defendant's actions to the success of the venture, and (3) the defendant's awareness of the nature and scope of the criminal enterprise.  Id. at 239.  Such an inquiry is necessarily fact-intensive and requires consideration of the defendant's culpability as against that of the other participants, indicted or not.  At the end of the day, "the reduction is available for a defendant whose role in the offense makes him substantially less culpable than the average participant."  Id. at 238.

Cort contends that the District Court failed to properly apply this standard because it "narrowly focused" on only two facts, failed to "fully" consider Cort's arguments in support of a downward adjustment, and, at bottom, did not assess his culpability in comparison to other participants.  Appellant's Br. at 15.  The difficulty for Cort, as the government correctly observes, is that the record of the sentencing hearing demonstrates that the District Court acknowledged and applied the correct legal standard.

Prior to sentencing, the parties submitted letter briefs on the applicability of § 3B1.2, and fully addressed the correct legal standard.  At sentencing, the District Court acknowledged reading these submissions and heard oral argument on the issue, during which Cort was given ample opportunity to present his contentions.  The District Court then stated:

> It is clear from the record that there are other participants besides Mr. Cort and Ms. Rodriguez.  And . . . I must consider his conduct relative to the conduct of other participants, as well as Mr. Cort's relationship to those other participants, the importance of Mr. Cort's actions to the success of the venture, and Mr. Cort's awareness of the nature and scope of the criminal enterprise.

App. 27-28.  In other words, the District Court expressly acknowledged its obligation to consider "relative culpability" vis-a-vis the other participants in the conspiracy and recited the precise factors we set forth in Isaza-Zapata.

Cort correctly notes that, after stating the legal standard, the District Court emphasized two facts it considered "determinative" of the issue, namely Cort's role as the recruiter of Rodriguez and his relationship with the drug suppliers in Jamaica, who turned to Cort when Rodriguez initially refused to ingest the cocaine filled pellets.  The focus on these two critical facts, however, does not mean that the District Court failed to

apply the correct legal standard.  While the District Court found those two facts "determinative," it did not by implication thereby exclude all other facts and issues from consideration.  Indeed, given the briefing and oral argument on the appropriate factors for consideration, coupled with the District Court's express acknowledgment of the correct legal standard and its statements at sentencing, including its statement that Cort was aware of the nature and scope of the criminal enterprise, we find that the District Court gave ample consideration to all of the factors raised by Cort, and find no legal error in the District Court's rejection of a minor role adjustment.

Cort also sought a "heartland" downward departure pursuant to U.S.S.G.   5K2.0. In the atypical case in which a defendant's conduct can be said to fall outside of the heartland of cases, a sentencing court may consider a departure from the Guidelines. United States v. Iannone, 184 F.3d 214, 226 (3d Cir. 1999).  Such departures are permissible "if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'"  U.S.S.G.   5K2.0, p.s. (quoting 18 U.S.C.   3553(b)). The Guidelines also permit a departure where a combination of factors remove a case from the heartland, even if none of the factors would individually distinguish the case from the norm.  U.S.S.G.   5K2.0 cmt.; see generally Koon v. United States, 518 U.S. 81, 94-96 & 113-14 (1996) (discussing the factors for a sentencing court to consider).

Cort does not contend that there is anything about the particular facts of his case that differentiates it from the typical drug importation conspiracy case.  Instead, Cort claims that he is entitled to a downward departure because the Sentencing Commission, when it promulgated the Guidelines, could not have envisioned the terrorist attacks of September 11, 2001 and the response by the federal government -- the "heartland," in other words, has been redefined.  Specifically, Cort contends that because of the government's response to the September 11 attacks, in particular the increased effort to prevent the unlawful entry of aliens into the United States by effectively sealing our borders, the need for deterrence by virtue of stiff sentences for illegal aliens has been "removed" because such aliens will not be able to re-enter the United States nearly as easily, if at all, following deportation.  Moreover, Cort opines, the waste of financial resources on the incarceration of convicted drug dealers who happen to be illegal (and therefore deportable) aliens is a basis for a downward departure because those funds could be more profitably used in the war on terrorism.  Under this logic, Cort conceded before the District Court, all deportable aliens -- but not convicted American citizens -- would be entitled to heartland departures in the wake of September 11.

According to Cort, the District Court held that it lacked the authority under the Guidelines to grant this "September 11" departure.  As with his minor role adjustment argument, Cort has misread what the District Court said.  In short, even assuming, without deciding, that a sentencing court may grant a heartland departure based on the arguments raised by Cort, a review of the record demonstrates that the District Court considered and rejected those arguments on the merits and not because it believed it lacked authority to grant a downward departure based on them.

Again, as with his minor role contention, Cort was afforded the opportunity to brief and argue his September 11 contentions.  In response, the government asserted, among other things, that the events of September 11 and the federal government's response simply did not render the circumstances of Cort's crime atypical, i.e., there was an insufficient causal connection between the geopolitical events surrounding the September 11 terrorist attacks and Cort's cocaine conspiracy to warrant a downward departure.

In rejecting Cort's September 11 arguments, the District Court observed that it had "the authority to depart downward when an individual case presents facts that are unusual enough that they fall outside the heartland of cases."  App.  35.  The District Court then accepted "the government's position that there is nothing unique to Mr. Cort's situation which would suggest to me that I should depart downward."  App. 35. The District Court added that the events of September 11 did not "change [its] approach to Mr. Cort's situation."  App. 36.  The District Court went on to concur with the government's policy and prudential observations as to why granting a downward departure based on the events surrounding September 11 would not make sense given Cort's circumstances, and at no time even suggested that it lacked the authority to

consider such events in resolving the request for a heartland departure.  Accord United States v. Denardi, 892 F.2d 269, 271 (3d Cir. 1989) ("The difficulty with defendant's argument is that we do not read the district court's sentencing remarks as indicating a belief that it lacked the power to deviate downward from the guideline range in a proper case.").  Accordingly, the District Court did not commit an error of law.

Parenthetically, we note that there are numerous flaws in the logic underlying Cort's September 11 arguments.  We will not burden this Opinion with a discussion of all of these flaws, but will point out a few examples.  First, as the government argued below and the District Court found, granting such a downward departure would create two classes of drug sentences, one for United States citizens and one for illegal aliens.  Giving illegal aliens a sentencing windfall from drug laws of general application based on terrorist attacks is simply untenable.  In addition, it is not necessarily correct, as Cort argues, that the deterrence value of stiff drug sentences has been eroded when it comes to illegal aliens because of tighter border controls.  In the wake of September 11, it is arguably more important than ever to send messages of deterrence to illegal aliens who seek to commit unlawful acts on United States soil.  Finally, Cort's contention that the financial "waste" of incarcerating him warrants a downward departure because of the fiscal needs created by September 11 is unavailing.  It is up to Congress to establish the statutory and Guideline sentences for drug traffickers and to decide what is and is not a "waste."

We will affirm the District Court's judgment of sentence.

FOR THE COURT:

/s/ Maryanne Trump Barry
Circuit Judge