NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1020
_____

UNITED STATES OF AMERICA

v.

MIGUEL HERNANDO AMEZQUITA-MACHADO,
                                        Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
D.C. Criminal No. 07-cr-00756-001
(Honorable Dennis M. Cavanaugh)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 26, 2011

Before:  McKEE, *Chief Judge*, SCIRICA and RENDELL, *Circuit Judges*.

(Filed June 28, 2011)
_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

Miguel Amezquita-Machado pleaded guilty to one count of conspiring to conduct

financial transactions involving proceeds of specified unlawful activity and one count of

intentional distribution of more than five kilograms of cocaine, knowing the cocaine

would be unlawfully imported into the United States. He was sentenced to ninety months'

imprisonment and three years' supervised release. On appeal, Amezquita-Machado contends the District Court committed procedural error by separating the counts into two groups, and this error resulted in a substantively unreasonable sentence. We will affirm.

I.

In July 2004, Amezquita-Machado began negotiating with co-conspirators to collect the proceeds of illegal narcotics trafficking held in the United States. On September 10, 2004, he arranged for a co-conspirator to pick up approximately $377,004 in New York and to notify him when the transaction was completed. Amezquita-Machado knew the funds would be converted to Colombian pesos and delivered to another co-conspirator in Colombia.

In November 2005, Amezquita-Machado introduced a cocaine supplier to an individual who, unbeknownst to Amezquita-Machado, was a confidential FBI informant. Between November 2005 and February 2006, Amezquita-Machado helped negotiate a multi-kilogram sale of cocaine between the informant and the supplier. On February 21, 2006, he accompanied the supplier to a hotel in Colombia, where Amezquita-Machado sold six kilograms of cocaine to the informant for $11,800. Amezquita-Machado believed the cocaine would be illegally imported into the United States.

On September 17, 2007, a grand jury indicted Amezquita-Machado and four co-defendants on eleven counts of various drug-related and money laundering offenses. Amezquita-Machado was charged with five counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1) and (h), for conspiring to conduct financial transactions involving

2

proceeds of specified unlawful activity, knowing the transactions were designed to conceal the nature, location, source, ownership, and control of the proceeds, and to avoid a transaction reporting requirement under federal law. He was also charged with one count of intentional distribution of more than five kilograms of cocaine, knowing the cocaine would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959 and 960(b)(1). Amezquita-Machado was arrested by Colombian authorities on December 6, 2007,  and was later extradited to the United States. On August 13, 2009, he pleaded guilty to one count of laundering $377,004 and one count of cocaine distribution. The government dropped the remaining money laundering counts.

The District Court, after hearing argument, applied a base offense level of eight for the money laundering count under U.S.S.G. § 2S1.1 and a twelve-level increase under U.S.S.G. § 2B1.1(b)(1)(G) because Amezquita-Machado laundered more than $200,000 but less than $400,000. The court applied a further six-level increase under U.S.S.G. § 2S1.1(b)(1) because Amezquita-Machado knew or believed the funds were the proceeds of an offense involving the manufacture, importation, or distribution of a controlled substance. It applied a final two-level increase under U.S.S.G. § 2S1.1(b)(2)(B) because Amezquita-Machado was convicted under 18 U.S.C. § 1956. Accordingly, the court applied a total offense level of twenty-eight for the money laundering count.

The court applied a base offense level of thirty-two for the distribution count under U.S.S.G. § 2D1.1(c)(4) because Amezquita-Machado delivered more than five and less than fifteen kilograms of cocaine. It applied a two-level reduction under the "safety

3

valve" of U.S.S.G. §§ 5C1.2 and 2D1.1(b)(11) because Amezquita-Machado had no criminal history points, did not threaten or use violence, did not cause injury in committing the offense, did not lead others in the offense or engage in a continuing criminal enterprise, and truthfully provided all information he possessed concerning the offenses. Accordingly, the court applied a total offense level of thirty for the distribution count.

Following the Presentence Report (PSR), the court applied a combined offense level of thirty-two for Amezquita-Machado under U.S.S.G. § 3D1.4, adding one level for each count to the higher offense level. The court adopted the PSR's conclusion that "[t]he two counts of conviction to which Amezquita-Machado pled guilty do not group together into a single Count Group under any of the provisions set forth at U.S.S.G. § 3D1.2." Amezquita-Machado did not object to this grouping decision in his sentencing memorandum or at the sentencing hearing.

The court applied a three-level reduction under U.S.S.G. § 3E1.1(a) and (b) for accepting responsibility. Notwithstanding the PSR's recommendation, the court did not apply an upward departure under U.S.S.G. § 3B1.1 for any aggravating role Amezquita-Machado may have played in these offenses. Overall, the court applied a total offense level of twenty-nine which, combined with Amezquita-Machado's lack of criminal history and safety valve reduction, resulted in an advisory sentencing guideline range of 87 to 108 months' imprisonment. The District Court sentenced Amezquita-Machado to

4

ninety-month terms of imprisonment for each count to run concurrently, followed by three years' supervised release. Amezquita-Machado timely appealed.[1]

## II.

On appeal, Amezquita-Machado contends the District Court committed procedural error by separating the counts into two groups, and this error resulted in a substantively unreasonable sentence.[2] Section 3D1.2 of the Sentencing Guidelines mandates:

> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:
> (a) When counts involve the same victim and the same act or transaction.
> (b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.
> (c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.
> (d) When the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[2] "[W]hen the asserted procedural error is purely legal," our standard of review is plenary. *United States v. Wise*, 515 F.3d 207, 217. However, "[b]ecause [the defendant] did not object to this sentence on this ground during the sentencing hearing, we review the District Court's judgment for plain error." *United States v. Watson*, 482 F.3d 269, 274 (3d Cir. 2007). "Under [plain error] review, relief is not warranted unless there has been (1) error, (2) that is plain, and (3) affects substantial rights." *Jones v. United States*, 527 U.S. 373, 389 (1999). Under this "circumscribed" standard, "[a]n appellate court should exercise its discretion to correct plain error only if it seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (internal quotations marks omitted).

The Sentencing Guidelines provide for grouping of counts "to prevent multiple punishment for substantially identical offense conduct, while still ensuring incremental punishment for significant additional criminal conduct." *United States v. Bush*, 56 F.3d 536, 538 (3d Cir. 1995) (internal quotations marks omitted).

Section 3D1.2(b) requires grouping "[w]hen counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." Amezquita-Machado first contends this section mandates grouping the money laundering and distribution counts because they involve the same victim, society at-large. In the context of drug offenses, however, the victim is "the societal interest that is harmed." U.S.S.G. § 3D1.2, cmt. n.2. "Drug offenses and money-laundering offenses are . . . crimes which 'invade distinct societal interests; the distribution of illegal drugs affects the drug user and the community by increasing lawlessness and violence, [while] money laundering disperses capital from lawfully operating economic institutions to criminals in and out of the country.'" *United States v. Harper*, 972 F.2d 321, 321-22 (11th Cir. 1992) (quoting *United States v. Gallo*, 927 F.2d 815, 824 (5th Cir. 1991)). Amezquita-Machado committed two crimes with two distinct victims. The District Court did not err, let alone plainly err, in adopting the PSR's conclusion that "[t]he counts do not involve the same victim."

Additionally, U.S.S.G. § 3D1.2(c) requires grouping "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." Amezquita-Machado

6

contends this section mandates grouping the counts because his drug distribution enhanced the offense level for the money laundering count. However, Amezquita-Machado laundered proceeds from previous drug trafficking over a year before he distributed cocaine. Therefore, the distribution count could not have aggravated the offense level for the money laundering count. The District Court did not err, let alone plainly err, in adopting the PSR's conclusion that "neither count would be treated as a specific offense characteristic to the other."

Finally, U.S.S.G. § 3D1.2(d) requires grouping "[w]hen the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior." Amezquita-Machado contends this section mandates grouping the counts because "drug offenses . . . and other crimes where the guidelines are based primarily on quantity or contemplate continuing behavior are to be grouped together." U.S.S.G. § 3D1.2, cmt. n.6. Money laundering and drug distribution may be grouped when intertwined in an ongoing conspiracy to launder profits from drug sales. *See United States v. Blackmon*, 557 F.3d 113, 122-24 (3d Cir. 2009). In this case, however, Amezquita-Machado laundered $377,004 over a year before selling six kilograms of cocaine for $11,800. The two offenses neither involved the same quantities of drugs or money nor embodied continuing illegal behavior. The District Court did not err, let alone plainly err,

7

in adopting the PSR's conclusion that "[t]he counts . . . do not result in a base level that can be determined using some measure of aggregate harm."

III.

For the foregoing reasons, we will affirm the judgment of conviction and sentence.